**FILED**

Jan 19 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ GloriaVocal        DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| |
|---|
| ------------------------------------------------------- X<br>Marshall A Wexler , Plaintiffs,<br>-against-<br>City of San Diego, California, San Diego Police Department, Officer Madison Badge #1546, Officer Andrew Scheidecker Badge # 6827, Officer Hibbard Badge # 1540, Officer Rayas Badge #1680, Officer Brandon Inzunza Badge #1515, all of the San Diego Police Department, Other Unknown Officers, Sergeants, Lieutenants, Captains and other Supervising Officers of the San Diego Police Department, Deputy Chief of Police and Chief of Police Respondents. _____<br>_____ X |

**CLASS ACTION
AND INDIVIDUAL  COMPLAINT  for
Illegal Eviction**

**JURY TRIAL DEMANDED**

**'24CV0137 DMS DDL**

COME NOW Plaintiff, for his cause of action against Defendants, allege and state as follows:

JURISDICTION
1. This Court has jurisdiction over the parties and the subject matter pursuant to federal question jurisdiction, because this is a case for damages  pursuant to the Civil Rights Act's 42 USC Section 1983 for deprivation of my Constitutional Rights and Civil Rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S Constitution and for conversion, illegal eviction and negligence in the hiring and retention of police officers.
PARTIES
2. Plaintiff **Marshall Wexler** is an individual residing in San Francisco .
4. Defendant San Diego Police Department Officer Madison Badge #1546 is an individual residing in San Diego California .
Defendant San Diego Police Department Officer Andrew Scheidecker Badge # 6827 is an individual residing in San Diego California .

1. Defendant San Diego Police Department Officer Hibbard Badge # 1540 is an individual residing in San Diego California .
2. Defendant San Diego Police Department Officer Rayas Badge #1680 is an individual residing in San Diego California .

3. Defendant San Diego Police Department Officer Brandon Inzunza Badge #1515 is an individual residing in San Diego California

4. and other Unknown officers and supervisors of the San Diego Police Department who I believe live in San Diego.

FACTUAL ALLEGATIONS

6. At all material times, Ann Dierx  ("landlord") was the owner of the real property located at 1311 Diamond St San Diego CA ("Property").

7. On or about 08/25/2023, Plaintiffs entered into a rental agreement with Landlord.

8. Plaintiffs moved into the Property on 08/28/2023 after staying in contact with the San Diego police over the course of the previous few days prior to 09/02 by telephone and these officers and agents of the police instructed me how to legally enter and occupy the apartment without facing arrest or eviction or  repossession but when the police arrived on the evening of 09/02 the responding officers named in the complaint  feigned ignorance at the entire situational context, namely that i paid rent and had a valid lease, and pretended like the reason I was being asked to leave was because of the purported misstatement of the law that says a contract isn't valid unless it is signed by both parties. This interpretation of the law is not for police officers to make and it is the wrong iteration of contract law for the police to apply to the facts here, because the police gave me permission to enter a week earlier because the landlord received money by zelle in the amount of the first months' rent and security deposit: thirty three hundred 3300 dollars and the landlord did not refund the money or respond to mine or the police inquiries about the situation. The San Diego police officers spoke with the landlord the Tuesday preceding the illegal eviction and the police did not intervene and told me it was deemed a mere contractual dispute between me and the landlord. Then on the day of the eviction, Saturday the Jewish Sabbath, the landlord knowing that sabbath would prevent me from driving, reaching my family who are sabbath observers, using my phone for non-emergencies etc., used these customs to her advantage to opportunistically evict me, with police help at a time when they knew I would be more vulnerable and it would be even more disrespectful and egregious for me.

The officers' presence did prevent me from exercising his common law right to use reasonable force to protect his home from private action – an action that the officers knew (or should have known) to be illegal. The facts that the officers did not arrest me and that the officers knew that I spoke to the San Diego police officer detective by phone the prior Tuesday and he did not intervene and tell me to leave my house under threat of arrest on Tuesday. The San Diego policeman by phone said he deems it a mere landlord tenant dispute, which I reasonably relied on to mean that I was allowed to keep  Possession of the apartment because Monday, 5 days prior to the illegal eviction, I was told by another unknown unnamed police officer by telephone that is recorded I could enter the apartment peacefully, she did

not authorize me to "break in but she said I could change the lock, because the landlord had stopped responding. Because, I signed a valid lease contract with the property owner for a term of years, to occupy the subject premises in exchange for, among other things, monthly payments of rent. I paid the rent to the landlord on the Friday prior to when I moved in three days later on Monday. I had proof of that payment in the form of my Chase bank account statement. The landlord accepted the rent and the signed lease but I did not receive a set of keys or a signed copy of the completed lease. The landlord did not answer my repeated attempts to contact her from Friday onwards.

9. At all material times, Plaintiff was a lawful resident and tenant of the Property.

FIRST CLAIM FOR RELIEF
(Wrongful Eviction)
10. On or about 09/02/2023, Defendants
arrived at 7:00pm even though i called them four hours earlier , the defendants were officers of the San Diego Police Department.  Officer Madison Badge #1546 was one the first on scene, Officer Andrew Scheidecker Badge # 6827 was the supervisor, Officer Hibbard Badge # 1540 arrived to further intimidate me and force me off my property with Officer Rayas Badge #1680, and Officer Brandon Inzunza Badge #1515 was first on the scene. These named officers and supervisors of the San Diego Police Department responded to my 911 call to report that I was being illegally evicted and was the victim of a battery by my landlord. The unknown unnamed
Officers did not respond in person but i spoke with them on the telephone.
The eviction was illegal, because it was done in violation of CA penal law and CA real estate law, without a warrant of eviction.

The Police report #23613816.1 omits material information pertaining to my assertion that me and the landlord had an agreement to lease the premises that I was illegally evicted from. I paid the landlord money and signed the lease and entered after receiving the permission of the landlord, which was subsequently withdrawn after I signed the lease and paid the money. Substantial evidence in the form of text messages, phone calls, lease and bank transactions, postage with my name on it and my personal belongings strewn around the property, clearly, demonstrated that I was evicted from my home without a warrant. The police officers on the scene first (Madison and Inzunza) arrived 4 hours after I called 911. They arrived and began to threaten to arrest me and intimidate me as if I was a trespasser. They said my lease was invalid because the landlord did not sign it. They said my landlord was permitted to physically remove me and my things without a warrant. I asked to speak to a supervisor and around an hour later Officer Scheidecker arrived and informed me that it was a "civil matter "and that the landlord was not committing any crimes and was not going to be charged or

arrested for not letting me have my belongings remaining in the house, or for illegally evicting me or for battering me or for locking me out. I was given permission to enter into the home by the San Diego Police via the non-emergency phone number on August 28 and August 30 by dispatchers and police officers.

11. Defendant's above-described actions constitute wrongful eviction under California law.

12. Defendant's above-described actions violated many          California enshrined in its Penal Law a statute forbidding self help evictions or even conduct meant to induce the tenant to leave.   It has long been the law in California that a tenant can be removed from a rental property only after there has been a court judgment and a writ of possession has been issued( ( Code of Civ. Proc. Sections 712.010, 715.010 et seq., 1159 et seq.; civ code section 789.3; penal code section 418.) even then only the sheriff or Marshall or their deputies may evict a tenant. No one else including a police officer may remove a tenant from their rental unit or force a tenant to leave.  Information bulletin No. 2022-DLE-05 put forth by John. D Marsh then chief of the California Department of Justice DIVISION OF LAW ENFORCEMENT explains this in detail how Penal Code section 418 makes it a misdemeanor to use encourage or assist another to use any force or violence in entering upon or detaining any lands or other possessions of another.  Civil code section 789.3 prohibits a landlord from changing the locks shutting off water or utilities or moving a tenant's belongings into the yard or street.  Police officers should never help landlords evict a tenant by force or threats.

13. As a result of Defendant's wrongful eviction, Plaintiff was wrongfully dispossessed of his rental unit.

14. As a result of Defendant's wrongful eviction, Plaintiffs suffered emotional and mental harm, property loss and humiliation, resulting in economic damages in an amount to be proven at trial.

15. As a result of Defendants' wrongful eviction, Plaintiff suffered embarrassment from being forced out of his house in a state of undress and having his belongings thrown out in the yard in such a way, he is suffering from depression, anxiety, sleep loss and feelings of hopelessness .

SECOND CLAIM FOR RELIEF (Intentional Infliction of Emotional Distress)

16. Paragraphs 1 through 15 are hereby realleged and incorporated into the Second Claim for Relief as if fully set forth herein.

17. By taking the above-described actions, Defendants intended to inflict emotional distress on Plaintiffs or should have known that emotional distress was the likely result of their conduct.

18. Defendant's conduct was extreme and outrageous.

19. As a result of Defendants' above-described actions, Plaintiff suffered severe emotional distress.

THIRD CLAIM FOR RELIEF (Conversion of Personal Property)

20. Paragraphs 1 through 19 are hereby realleged and incorporated into the Third Claim for Relief as if fully set forth herein.

21. Defendant, as previously stated, wilfully and wrongfully prevented plaintiff from accessing his personal effects from inside his house in violation of California law.

22. Defendants intentionally, wilfully, and wrongfully converted Plaintiffs' personal property located at the Property.

22. As a result of Defendant's conversion of his personal property, Plaintiff suffered economic damages in an amount to be proven at trial

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a. For compensatory damages in the amount of five million dollars ($5,000,000.00);

b. For punitive damages;

C. An injunction against the state officials from continuing to perform such illegal evictions, for the court to grant an order permitting me to reenter my home for the term of the lease.

D.  restoration of possession

E. compensatory damages, in an amount to be proven at trial but not less than Five Million Dollars ("$5,000,000");

F. punitive damages and

G.  Such other relief as the Court deems just and proper.


Dated:01/16/2024


SanFrancisco, California


_____

Marshall Wexler

Pro Se Litigant

Marshwex@gmail.com

01/017/2024

6467455627 or 347794984

Dated: 01/16/2024

    San Francisco, California

                                Marshall Wexler

                                Pro Se Litigant

Exhibits    *See enclosed*

In the Matter of the Claim of                    *Legal Analysis*

Marshall A. Wexler,

Claimant

-against-

City of San Diego, California, San Diego Police Department, Officer Madison Badge #1546,

Officer Andrew Scheidecker Badge # 6827, Officer Hibbard Badge # 1540, Officer Rayas Badge

#1680, Officer Brandon Inzunza Badge #1515, all of the San Diego Police Department, Other

Unknown Officers, Sergeants, Lieutenants, Captains and other Supervising Officers of the San

Diego Police Department, Deputy Chief of Police and Chief of Police

Respondents.


**Name and Address of Claimant**

Claimant


Marshall Wexler

1311 Diamond St

San Diego, CA 92109

3477994984

Marshwex@gmail.com


**Nature of the Claim**:

Damages pursuant to 42 USC Section 1983 for deprivation of my Constitutional Rights and Civil Rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S Constitution and for conversion, illegal eviction and negligence in the hiring and retention of police officers.

**Parties**

**Marshall Wexler,**

a Diego Police Department Officer Madison Badge #1546, Officer Andrew Scheidecker Badge # 6827, Officer Hibbard Badge # 1540, Officer Rayas Badge #1680, and Officer Brandon Inzunza Badge #1515 and other Uknown officers and supervisors of the San Diego Police Department To my knowledge they are residents of Southern California where this case is filed.

**Facts**

The officers did not respond for 7 hours after being called for an emergency, the officers created the situation by allowing the illegal eviction by ignoring the emergency call.

There was a reported battery and illegal eviction at 1:00 pm approx. but the police only responded at 7:00 pm because the police officers named and unnamed.

On September 2, 2023 at around 7:00pm San Diego Police Department Officer Madison Badge #1546, Officer Andrew Scheidecker Badge # 6827, Officer Hibbard Badge # 1540, Officer Rayas Badge #1680, and Officer Brandon Inzunza Badge #1515 and other Unknown officers and supervisors of the San Diego Police Department responded to my 911 call to report that I was being illegally evicted and was the victim of a battery by my landlord. The eviction was illegal, because it was done in violation of CA penal law and CA real estate law, without a

warrant of eviction. The Police report #23613816.1 omits material information pertaining to my assertion that me and the landlord had an agreement to lease the premises that I was illegally evicted from. I paid the landlord money and signed the lease and entered after receiving the permission of the landlord, which was subsequently withdrawn after I signed the lease and paid the money. Substantial evidence in the form of text messages, phone calls, lease and bank transactions, postage with my name on it and my personal belongings strewn around the property, clearly, demonstrated that I was evicted from my home without a warrant. The police officers on the scene first (Madison and Inzunza) arrived 4 hours after I called 911. They arrived and began to threaten to arrest me and intimidate me as if I was a trespasser. They said my lease was invalid because the landlord did not sign it. They said my landlord was permitted to physically remove me and my things without a warrant. I asked to speak to a supervisor and around an hour later Officer Scheidecker arrived and informed me that it was a "civil matter "and that the landlord was not committing any crimes and was not going to be charged or arrested for not letting me have my belongings remaining in the house, or for illegally evicting me or for battering me or for locking me out. I was given permission to enter into the home by the San Diego Police via the non-emergency phone number on August 28 and August 30 by dispatchers and police officers.

There was a clear conspiracy between the responding officers, and the subsequent responding officers plus the supervisor, and the landlord and property manager to evict me. Between the hours of 1:00 pm and 7:00 pm I was waiting for police, during this time the police and property manager waited for me to need to use the restroom and become tired and hungry while watching me on the video cameras to pounce and inform me that they would not help me reenter the

premises despite the standing law enforcement guidance requiring law enforcement to do that. These facts demonstrate the failure to act by the police pursuant to state law was willful dissonance by the police and they very clearly demonstrates how eviction was planned and coordinated between the police and property management.

I was in contact with the San Diego police over the course of the previous few days prior to 09/02 by telephone and these officers and agents of the police instructed me how to legally enter and occupy the apartment without facing arrest or eviction or repossession but when the police arrived on the evening of 09/02 they feigned ignorance at the entire situational context and pretended like the reason I was being asked to leave was because of the purported law that says a contract isn't valid unless it is signed by both parties. This interpretation of the law is not for police officers to make and it is the wrong iteration of contract law for the police to apply to the facts here, because the police gave me permission to enter a week earlier because the landlord received money by zelle in the amount of the first months' rent and security deposit: thirty three hundred 3300 dollars and the landlord did not refund the money or respond to mine or the police inquiries about the situation. The San Diego police officers spoke with the landlord the Tuesday preceding the Saturday illegal eviction and the police did not intervene and told me it was deemed a mere contractual dispute between me and the landlord. Then on Saturday the landlord knowing that sabbath would prevent me from driving, reaching my family who are sabbath observers, using my phone for non-emergencies etc., used these customs to her advantage to opportunistically evict me, with police help at a time when they knew I would be more vulnerable and it would be even more disrespectful and egregious for me.

their presence did prevent me from exercising his common law right to use reasonable force to protect his home from private action – an action that the officers knew (or should have known) to be illegal. The facts that the officers did not arrest me and that the officers knew that I spoke to the San Diego police officer detective by phone the prior Tuesday and he did not intervene and tell me to leave my house under threat of arrest on Tuesday. The San Diego policeman by phone said he deems it a mere landlord tenant dispute, which I reasonably relied on to mean that I was allowed to keep

Possession of the apartment because Monday, 5 days prior to the illegal eviction, I was told by another police officer by telephone that is recorded I could enter the apartment peacefully, she did not authorize me to "break in but she said I could change the lock, because the landlord had stopped responding. Because, I signed a valid lease contract with the property owner for a term of years, to occupy the subject premises in exchange for, among other things, monthly payments of rent. I paid the rent to the landlord on the Friday prior to when I moved in three days later on Monday. I had proof of that payment in the form of my Chase bank account statement. The landlord accepted the rent and the signed lease but I did not receive a set of keys or a signed copy of the completed lease. The landlord did not answer my repeated attempts to contact her from Friday onwards. This exacerbated my feelings of frustration and desperation over not being able to

Move into my house and the thought of having to stay in a hotel not only until the Monday after the weekend, but possibly indefinitely, I stayed in hotels before and after the illegal eviction. The landlord and the police did not respond to my situation in a manner that was appropriate under the circumstances to begin with. Instead of treating me, someone displaced without a home, as a victim I was forced into a catch-22 situation where I needed to defend my own

constitutional rights but I could not because the police were coordinating how to repo my property and displace me with my landlord after I spoke with them on Tuesday. I know this because the self-help eviction that was done on Saturday was open and notorious. It was done with physical force. I woke up to the landlord's agent, a 6'6 man of military age being obnoxious by drilling a sign on the fence with a drill that was both overly powerful and noisy, it was an industrial drill with a dull and unstable drill bit used to psychologically intimidate me into fearing for my property and self. In violation of my religious beliefs I recorded him doing it on sabbath morning because it was an open message that he was seeming me in trespass. This message he sent drilling a large no trespassing sign in the presence of my new neighbors to embarrass and harass me was, an excessive

Abuse of the landlords First amendment and was clearly illegal to do if it was done out of spite and animus to me exercising my legal rights with my lawful possession of my property. In the hours that followed this first contact with the property management agents, the dur a lock, locksmith company, my landlord, and notably the San Diego police demonstrate clearly there was a conspiracy to prevent me from exercising lawful dominion and control over my own property which I was in lawful possession of pursuant to a contract that had express terms. the existence of the lease was known to the police officers at the time of the eviction.

The law is clear if one party signs an agreement or is because they intend to be bound by it. Contract law requires intent content and communication for an offer to be valid, the intent, content and communication are clear the landlord evinced intent to lease the apartment to me because landlord sent me a lease agreement containing my name, a term of occupancy specified in exchange for payment in a method and manner specified. The general rule is that there must be an offer, acceptance and consideration for there to be a binding agreement on both

parties. Here there was an acceptance both by performance and by assent in writing. For an acceptance to be valid it must be a clear, unequivocal unilateral acceptance to the offeree's terms and that unequivocal unilateral acceptance must be communicated to the offeree in either a manner specified in the contract of statute or in the same manner as the offer was delivered. Here there were negotiations on many communication platforms, email, text and telephone. The email and telephone records shown to the defendant officers demonstrates The offer was negotiated by telephone and the lease offer was sent through email, the tenant and the landlord made a written and oral modification to the lease to permit tenant to move in upon the tender of the partial payment made 8 days before the illegal eviction on Friday afternoon and three days before tenant moved in, that was not accounted for by the landlord to tenant nor was it a factor whatsoever in the police officers determination that the lease was invalid. according to the police officers, and the sergeant supervisor the lease was invalid because it was unsigned by the landlord.

The landlord was in breach of contract the whole time she held the money without giving me the keys. The landlord was acting in bad faith and dishonestly claimed that I would be authorized to move in just to obtain payment and then break her word to keep the payment.

This situation caused me immense suffering embarrassment and invasion of privacy. The police made this situation occur because they were involved in every step of the way by both the landlord and the tenant. Instead of threatening the tenant with arrest for trespassing the police should

Have threatened the landlord with arrest for the illegal lockout, the eviction and repo of tenant's belongings including his medicines if the landlord did not permit the tenant from reentering.

The police watched the cameras and waiting until after I moved the cameras on the property to show up and ask me to leave.

The police read the lease but indicated they believed the lease was invalid even though I signed it and paid the rent and security deposit. The police said that even though I signed the lease and paid the rent and security deposit it was invalid. because the landlord claimed to have never permitted me to move in, and the rent and security deposit was not completely satisfied, and because there was only a partial payment and the landlord never signed the lease I was not in lawful possession of the subject premises. The police and the landlord both acknowledged I was in possession of the premises, the lease was not a forgery, that I paid part of the rent on the same day and at the same time when the lease said the lease term begins. I kept saying to the police who first arrived I would have not paid the money if I had not received assurances from the landlord that I could move in.  I showed the police officers emails that I received from the landlord in support of my story. I was never trespassing I complied with all the instructions law enforcement provided me. The facts and circumstances clearly demonstrated the landlord was seeking to evict me without a deposit, that the landlord gave me permission enter the apartment to get me to pay her and then rescinded her permission after I paid her.


The landlord's story was not more believable than my story. The landlord's story was unbelievable because the police used the incorrect interpretation of California contract law


**Law**

The Eleventh Amendment of our constitution forbids lawsuits for money damages against state government for government actions in federal court, but 1983 is an exception to federal court intervening in state proceedings

The Monroe v Pape case held that even though municipalities cannot be liable under the Civil Rights Act of 1871, individuals acting "under color of law" can be sued for damages for denying the constitutional rights of individuals.¹42 U.S.C. § 1983 was also meant to give a remedy to parties deprived of constitutional rights, privileges, and immunities by an official's abuse of his position, as the federal remedy was supplementary to any state remedy, and the latter need not have been first sought and refused before the federal one was invoked

Requires the Subjective good faith belief that action was lawful.

The facts show qualified immunity is not applicable under the circumstances of this case.

Landlord Tenant law mandates only a sheriff can carry out an eviction.

The Supreme Court has established a two-prong test to determine whether qualified immunity applies. *Pearson v. Callahan*, 555 U.S. 223, 235-36, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). A court must deny qualified immunity when (1) the allegations, if true, amount to a constitutional violation, and (2) the constitutional violation was clearly established at the time. *Id.*

The first prong under the qualified immunity test determines whether the named and unnamed Defendant Police Officers violated my constitutional right. A court must deny qualified

immunity if the facts alleged, taken in the light most favorable to the party asserting injury show that the officers' conduct violated_ a constitutional right. *See Green v. City & Cnty. San Francisco*, 751 F.3d at 1051-52 (citation and quotations omitted).

Here, a trier of fact reviewing the facts in the light most favorable to me, could conclude that Defendants' threats of arrest and intimidation, refusal to help me reenter my house, stepping into the shoes of the landlord in a residential landlord-tenant dispute and refusal to let me collect my things were unwarranted. Thus, the named and unnamed Police Officer Defendants are not entitled to qualified immunity at summary judgment or any stage of the litigation.

Even if the qualified immunity doctrine did not fail under the first prong, it fails under the second. At the second state, the Court should look at whether the right at issue was clearly established at the time of the incident such that a reasonable psychiatrist would have understood his conduct to be unlawful in that situation. *Green v. City & Cnty. San Francisco*, 751 F.3d at 1051-52 (citation and quotations omitted). A right is "clearly established" only if "every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*,577 U.S. 7, 136 S.Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (emphasis added). That showing "requires a high degree of specificity." *D.C. v. Wesby*, 138 S. Ct. 577, 590, 199 L. Ed. 2d 453 (2018) (internal quotation marks omitted). The second prong requires two separate questions: "(1) whether the law governing the conduct at issue was clearly established and (2) whether the facts as alleged_ could support a reasonable belief that the conduct in question conformed to the established law." *Green v. City & Cnty. of San Francisco*, 751 F.3d at 1052. "Both are questions of law to be determined by the court in the absence of genuine issues of material fact." *Id.*

Here, triable issues of fact remain as to when and what the Defendant Police Officers knew at the time of their orders and under what circumstances the orders were given. Thus, the named and unnamed Police Officer Defendants cannot be granted qualified immunity on this basis.

Qualified immunity allows for mistaken judgments only if they are reasonable,

This is an open and notorious of the 4th amendment because the officers conduct clearly violated my clearly established constitutional rights, the police commanded me to leave the premises under threat of jail.

It was completely unreasonable for the police to not respond for nearly 7 hours after I called and it was especially unreasonable for the responding officers to fill in the shoes of the homeowner to make me leave my home without a court order.

the dur a lock locksmith, can provide eyewitness Testimony supporting my events, he was on scene and changed the locks and remarked the landlord was doing something wrong by throwing my things out and changing the locks and using physical force to intimidate me from defending my property rights.

The police did not respond in person until many hours after the landlord hit me and changed the locks even though I called them right away, they only responded to force me to leave the property and did not follow the police officer guidance for victims of illegal evictions.

California Landlord Tenant law mandates only a Sheriff can carry out an eviction.

Repossession of real property without a court order, is illegal, especially if it is occupied as someone's residence. Every police officer knows they cannot perform an eviction. Only the Sherriff can perform an eviction. The officers knowingly engaged in dissonance.

Even if the landlady was only repossessing secured goods subject to an article nine security agreement pursuant to California Commercial code 96:06, which she wasn't, she would need to do so without breach of peace that is not how the incident here was handled. And this type of repossession is illegal as applied to real property, which cannot move, because the risk of harm to the tenant is far greater than the risk of the secured property.

The police officer Defendants named were present on the scene and were aware that I was lawfully occupying the subject premises, 1311 Diamond Street San Diego, and there was an ongoing factual dispute between me and the landlord consisting of the following issues: if the full amount of rent was paid and if the lease agreement I signed was a valid contract. There was no basis for the police to believe the lease was a forgery, or that I was not in lawful possession of the premises pursuant to the valid lease me and the landlady signed.

Officers are not under any duty and have no power to evict anyone in lawful possession of their property without a court order. This is an open and notorious of the 4th amendment because the officers conduct clearly violated my clearly established constitutional rights, the police commanded me to leave the premises under threat of jail. A very clearly established right has been violated; my right to property. The contours of the right to possess your property free of deprivation are crystal clear.

The law is so clearly established, because there have been multiple supreme court decisions, Soldal v. Cook County, 506 U.S. 56 (1992) And United States v. James Daniel Good Real Property, 510 U.S. 43 (1993) that the police should not have the benefit of qualified immunity by invoking any good faith belief that they were following the law defense. The fourth amendment applies to all unlawful seizures of property by state agents including my lease and including my personal effects the police prevented me from obtaining. The Supreme Court in Soldal The Court emphatically disagreed with the Appeals Court, and found that: The Fourth Amendment protects both property as well as privacy interests. Even absent a search or an arrest, a seizure of property implicates the Fourth Amendment. The Fourth Amendment applies not only to seizures made within a criminal context, but also to those made within a civil context as well.

I am seeking an ex parte young injunction against the state officials from continuing to perform such illegal evictions, for the court to grant an order permitting me to reenter my home for the term of the lease, and money damages, in an amount to be proven at trial but not less than Five Million Dollars ("$5,000,000")

(1) restoration of possession [§ 25];

(2) compensatory damages [§ 26];

(3) multiple damages or punitive damages in some jurisdictions [§ 27]; and

(4) attorney's fees and costs in some jurisdictions [§ 29].













**3:52**

**56**     **+1 (858) 337-4700**

signed lease.

Fri, Aug 25 at 12:59 PM

I may not have all the money ready today for a wire or a check. I am still waiting for funds to clear. Is there anyway to do this sunday or tomorrow?

I don't know if there is any way. I don't know when or where your funds are coming from. Only you know that. You can call Wells Fargo and Chase to find out if they are open tomorrow. There are no wires on Saturday or Sunday. If you have Zelle, I suggest you send what you have now that way.

Zelle asks for a phone number associated with the account number. Use this number. Send a test dollar and I will tell you if I got it or not. Then send the rest of what you have. I think there may be a daily limit. The best way to find out is the start the process.

You asked me for 6750 or 6250?

I only have 3000 today
I can have the rest for you on monday

It will be by wire





