1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   SOUTHERN DISTRICT OF CALIFORNIA
10

11   Marshall A. Wexler,                          Case No.:  24-cv-137-DMS-DDL
12                                Plaintiff,       **ORDER GRANTING DEFENDANTS'
13          v.                                     MOTIONS TO DISMISS PURSUANT
                                                   TO RULE 12(b)(6) AND DENYING
14   City of San Diego, California, San Diego      DEFENDANTS' MOTIONS TO
     Police Department, Chief of Police David      DISMISS PURSUANT TO RULE
15   Nisleit, Department of Operations            12(b)(7)**
     Executive Assistant Chief Paul Connelly,
16   Patrol Operations Assistant Chief Tina
     Williams, Northern Patrol Captain
17   Benjerwin Manansala, Officer Madison
     Badge # 1546, Officer Andrew
18   Scheidecker Badge # 6827, Officer
     Hibbard Badge # 1540, Officer Rayas
19   Badge # 1680, Officer Brandon Inzunza
     Badge # 1515, and Other Unknown
20   Officers, Detectives Sergeants Lieutenants
     and Captains who were Police Officers of
21   the San Diego Police Department, Dup-A-
     Key Inc., Weston Daniel Fisk, as owner
22   and operator of Dup-A-Key Inc., Rough
     Rider Real Estate, Inc. d/b/a Wiese &
23   Associates, Erik Wiese as owner and
     operator of Rough Rider, Real Estate, Inc.
24
25                               Defendants,
26
27
28

                                    1
                                                              24-cv-137-DMS-DDL

Pending before the Court are Defendants' three motions to dismiss Plaintiff's Second Amended Complaint ("SAC") under Fed. R. Civ. P. 12(b)(6) and 12(b)(7).[1] (ECF Nos. 31, 32, 34).  Plaintiff, proceeding pro se and with permission of the Court, filed an omnibus opposition to all three motions.  (ECF No. 38).  Defendants filed three different replies.  (ECF Nos. 39–41).  The Court found this matter to be suitable for resolution without oral argument pursuant to Civil Local Rule 7.1(d)(1).  (ECF No. 42).  For the following reasons, the Court **GRANTS** Defendants' motions to dismiss pursuant to Rule 12(b)(6) with leave to amend and **DENIES** Defendants' motions to dismiss pursuant to Rule 12(b)(7).

## I.    BACKGROUND

Plaintiff asserts the following allegations in his SAC, which the Court accepts as true for the purpose of resolving Defendants' motions to dismiss.[2]  Prior to August 25, 2023, Plaintiff Marshall Wexler and prospective landlord Anne Dierickx had an unsigned 13-month lease in place where Plaintiff would rent the property at 1311 Diamond Street, San Diego CA 92109.  (SAC, at 78–80).  On August 25, 2023, Plaintiff attempted to pay his landlord, Anne Dierickx,[3] his first month's rent and deposit prior to moving into the rental property.  (*Id.* ¶¶ 37–45).  However, due to a disagreement over Plaintiff's partial payment of the deposit and his proposed methods of paying the rest of the deposit, Dierickx decided to not "give the keys over" to Plaintiff.  (*Id.* ¶ 43).

---

[1] Plaintiff sued three sets of defendants.  First, Plaintiff sued Dup-A-Key, Inc. and Weston Daniel ("Defendant Dup-A-Key").  Second, Plaintiff sued the City of San Diego and San Diego Police Department ("SDPD"); David Nisleit, Paul Connelly, Tina Williams, and Benjerwin Mansala ("SDPD Officials"); Officer Madison, Officer Andrew Scheidecker, Officer Hibbard, Officer Rayas, Officer Brandon Inzunza, other unknown SDPD officers, and all the SDPD ("SDPD Officers").  The Court will refer to this group of defendants collectively as "Defendant City of San Diego."  Third, Plaintiff sued Rough Rider Real Estate Inc. and Erik Wiese ("Rough Rider Real Estate").

[2] The Court is not, however, limited to the allegations contained in the complaint "[i]f [the] complaint is accompanied by attached documents . . . . These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

[3] Anne Dierickx is not currently a party to this lawsuit.

From August 26, 2023 to August 27, 2024, Plaintiff unsuccessfully tried to resolve the disagreement with Ms. Dierickx.  Plaintiff solicited advice from an unnamed police officer to enter the rental unit on August 28, 2023 if Ms. Dierickx did not respond by then.  (*Id.* ¶ 48–49).  On August 28, 2023, Plaintiff hired a locksmith to replace the rental unit's door lock and gained access to the premises.  (*Id.* ¶ 50).

Plaintiff occupied the rental unit from August 28, 2023 to September 2, 2023.  (*Id.* ¶¶ 50, 68).  On September 2, 2023, Plaintiff observed a Defendant Rough Rider Real Estate employee install a "No Trespassing" sign onto the rental property and add a padlock to the property's fence gate.  (*Id.* ¶ 127).  Plaintiff then departed the rental property to attend religious services and returned to a "locked" gate.  (*Id.* ¶ 93).  So, Plaintiff "climb[ed] his fence" to regain access to the premises.  (*Id.*).  Plaintiff later observed Ms. Dierickx' arrival with a Defendant Dup-a-key employee, who changed the locks to the rental unit.  (*Id.* ¶ 94).  Dierickx then started to "dispos[e] of [Plaintiff's] things" from the rental unit and "prevented Plaintiff from accessing the rest of his precious belongings."  (*Id.* ¶¶ 92, 94).  Plaintiff protested and was "physically pushed" by Ms. Dierickx.  (*Id.* ¶ 94).  Plaintiff then called the police.  (*Id.*).  While he waited for the police to arrive, Plaintiff brought the same locksmith who helped him change the locks on August 28, 2023 to re-change the locks.  (*Id.* ¶ 97).  This time, Plaintiff's locksmith refused to change the locks "because the owner was present and she told [Plaintiff's locksmith] that she did not permit this and that it was illegal."  (*Id.*).

Sometime in the early evening of September 2, 2023, Defendants Officers Madison and Inzunza arrived at the rental unit.  (*Id.* ¶ 53).  Plaintiff felt "fear for his health and safety" due to Defendants' placement of "their hands on their weapons," "black gloves," and interruptions whenever Plaintiff attempted to answer their questions.  (*Id.*)  Soon after, Defendants Officers Rayas and Hibbard arrived and their behavior added to Plaintiff's "feelings of intense trepidation fear [sic] and intimidation."  (*Id.* ¶ 54).  Then, the Defendant Officers refused to take action against Ms. Dierickx because they determined that "[it] was not a criminal matter and [it] was a mere civil dispute."  (*Id.* ¶ 56).  Plaintiff asked to speak

to a supervisor and was allowed to pack his belongings into garbage bags.  (*Id.* ¶ 111).[4]  Eventually Plaintiff spoke with Defendant Officer Scheidecker, who reiterated the other officers' determination that this was a "civil matter" and threatened Plaintiff with arrest for trespassing if he did not leave the premises.  (*Id.*).  After these events, Plaintiff spent "the next several months . . . liv[ing] a transient lifestyle."  (*Id.* ¶ 171).

On January 19, 2024, Plaintiff initiated this action and sued Defendants City of San Diego, SDPD, SDPD Officials, and SDPD Officers.  Plaintiff later filed his first amended complaint ("FAC") on February 21, 2024 (ECF No. 5) and then filed his SAC on March 1, 2024. (ECF No. 6).[5]  In his amended complaints, Plaintiff added Defendants Dup-A-Key and Rough Rider Real Estate.

**A. Claims**

Plaintiff alleges the following five categories of claims as a class action against any number of Defendants.  While Plaintiff is not the clearest in identifying which claims he levies against which Defendants, the Court interprets his SAC as follows:

1. 42 U.S.C. § 1983 for violation of the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments against Defendants SDPD Officials and Police Officers (SAC ¶¶ 172–212);

2. California Government Code § 52.1 (Bane Act) against all Defendants (*Id.* ¶¶ 213–14);

3. Conversion of Chattel against all Defendants (*Id.* at 54–55);

4. Civil Conspiracy to Commit (1) Conversion; (2) Wrongful eviction under California Civil Code § 789.3; (3) Violations of the California State

---

[4] At one point, Defendant Officer Madison temporarily possessed Plaintiff's two-inch pocketknife due to safety concerns.  (SAC, at 76).  Officer Madison later returned Plaintiff's pocketknife and placed it in the backyard of the property.  (*Id.*).

[5] For all intents and purposes, the FAC is materially identical to the SAC.  This Court sua sponte dismissed this case due to the Plaintiff's failure to pay a $405 civil filing fee and administrative fees or to submit a Motion to Proceed IFP pursuant to 28 U.S.C. § 1914(a) and § 1915(a).  (ECF No. 4).  Plaintiff then filed his SAC and paid the requisite fees.  (ECF Nos. 8–9).

Constitution; (4) Violations of California Penal Code §§ 418, 484, 518, and 602.5; (5) Violations of California Civil Code §§ 1940.2; and (6) Violations of California Government Code § 52.1 (Bane Act) against SDPD Officers Madison, Scheidecker, Hibbard, Rayas, Inzunza, and Defendants Rough Rider Real Estate and Dup-a-Key (*Id.* at 55–58); and

5. 42 U.S.C. § 1983 (*Monell*) for violation of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments against the City of San Diego, SDPD, and SDPD Chief David Nisleit. (*Id.* at 58–61).

## II.    LEGAL STANDARD

### A. Federal Rule 12(b)(6)

Under Federal Rules of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins.*, 519

F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). "[I]n general, courts must construe pro se pleadings liberally." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). However, pro se attorneys are not afforded this solicitude. *See Huffman v. Lindgren*, 81 F.4th 1016, 1020–21 (9th Cir. 2023).

When a court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. Leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and "this policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment," *Intri-Plex Techs. v. Crest Grp., Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007), or "if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

**B. Federal Rule 12(b)(7)**

Under Federal Rule 12(b)(7), a party may file a motion to dismiss on the grounds that a party "fail[ed] to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). "A person or entity is a 'required party' and 'must be joined' if feasible if either 'in that [party's] absence, the court cannot accord complete relief among existing parties'; or if 'that [party] claims an interest relating to the subject of the action and is so situated that disposing of the action in the [party]'s absence may . . . as a practical matter impair or impede the [party]'s ability to protect the interest' or 'leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 851 (9th Cir. 2019) (quoting Fed. R. Civ. P. 19(a)(1)). "If a person has not been joined as required, the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2).

### III.    DISCUSSION

**A. Evidentiary Rulings**

1. <u>Request for Judicial Notice</u>

Federal Rule of Evidence 201(b) permits judicial notice of any fact "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). "A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. But a court cannot take judicial notice of disputed facts contained in such public records." *Khoja*, 899 F.3d at 999 (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 669 (9th Cir. 2001)).

Defendant City of San Diego asks this Court to take judicial notice of the existence of Plaintiff's complaint against Anne Dierickx in the Superior Court of California, County of San Diego. (ECF No. 32-5). Plaintiff has not opposed. This Court may take judicial notice of related state court filings, but not for the truth of the facts asserted. *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (granting Plaintiff's motion for judicial notice of pleadings filed in a related state court action); *see e.g., Lee*, 250 F.3d at 690 ("On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion."). The Court therefore takes judicial notice of the existence of Plaintiff's state court complaint but not the truth of its contents.

2. <u>Request for incorporation of police body-worn camera footage</u>

Defendant City of San Diego also requests that the Court incorporate by reference Defendant Officer Inzunza's body camera footage. (ECF No. 32-1). "A defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Khoja*, 899 F.3d at 1002 (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). "For

'extensively' to mean anything . . . it should, ordinarily at least, mean more than once. . . . [A] reference may be sufficiently 'extensive' if a single reference is relatively lengthy." *Id.* at 1003.  Put differently, "incorporation-by-reference requires more than that the document or video provides 'a full understanding' of the incident."  *Lee v. City of San Diego*, No. 18-cv-159-W, 2019 WL 117775, at *4 (S.D. Cal. Jan. 7, 2019).

Defendant City of San Diego does not claim that the body camera footage forms the basis of Plaintiff's claim.  Instead, Defendant argues that the footage "accurately depicts the interactions with Plaintiff that form the foundation for his allegations against the City Defendants."  (ECF No. 32-1, at 8–9).  Plaintiff asserts that the footage "is misleading and . . . does not accurately or adequately represent the matter" since "it starts after the initial encounter took place and leaves out important contextual dialogue."  (ECF No. 38, at 15).

Plaintiff refers to body camera footage only twice in his SAC.  (SAC ¶¶ 53, 197). Both instances briefly discuss how the body camera footage would or could show Plaintiff's "immediate fear for his health and safety" and some of Defendant Officers Inzunza's and Madison's allegedly intimidating behavior.  (*Id.*).  Plaintiff's SAC therefore does not extensively refer to the body camera footage.  Accordingly, the Court **DENIES** Defendant's request to incorporate by reference Officer Inzunza's body camera footage.

**B. Requests for Stay**

Defendant City of San Diego requests that this Court stay this case under the Rooker-Feldman and Younger Abstention Doctrines. (ECF No. 32-1).  For the reasons discussed below, this Court denies Defendant's requests for stay.

1. <u>Rooker-Feldman</u>

The Rooker-Feldman doctrine states that "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003).  The doctrine is a two-step test.  First, the federal action must "contain[] a forbidden de factor appeal of a state court decision.  A de facto appeal exists when a federal plaintiff asserts as a legal wrong an allegedly

erroneous decision by a state court, and seeks relief from a state court judgment based on that decision.' In contrast, if a 'federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction.' Thus, even if a plaintiff seeks relief from a state court judgment, such a suit is a forbidden de facto appeal only if the plaintiff *also* alleges a legal error by the state court." *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013) (quoting *Noel*, 341 F.3d at 1164). Second, "[i]f 'a federal plaintiff seeks to bring a forbidden de facto appeal, . . . that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state court judicial decision from which the forbidden de facto appeal is brought.'" *Id.* (quoting *Noel*, 341 F.3d at 1158).

Defendant City of San Diego argues that Plaintiff is attempting to appeal his "wrongful eviction case" against Anne Dierickx. (ECF No. 32-1, at 11–12). However, there is no state court decision for Plaintiff to de facto appeal since the state court case is still ongoing. Therefore, the Rooker-Feldman doctrine does not bar this court from hearing Plaintiff's claims.[6] Accordingly, the Court **DENIES** Defendant's request to stay under the Rooker-Feldman doctrine.

### 2. *Younger* Abstention

The *Younger* abstention doctrine "forbid[s] federal courts [from] stay[ing] or enjoin[ing] pending state court proceedings." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1147 (9th Cir. 2007) (quoting *Younger v. Harris*, 401 U.S. 37, 41 (1971)). Four elements must be satisfied before the *Younger* doctrine requires abstention: (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal litigant is not barred from litigating federal constitutional issues in the federal

---

[6] Defendant City of San Diego seems to also make the argument that the Court may, irrespective of any abstention doctrine, exercise its discretion to stay this case out of comity to the ongoing state court case. (ECF No. 32-1, at 11–12). The Court declines to issue a stay based on comity on the record presently before the Court.

proceeding; and (4) "the court's action would enjoin, or have the practical effect of enjoining, ongoing state court proceedings." *Id.* at 1149.

Defendant City of San Diego argues that the first three *Younger* elements are met and does not discuss the fourth element.  (ECF No. 32-1, at 13).  As to "important state interests," Defendant argues that "California has an important state interest in determining the rights of its own citizens—here, whether or not Plaintiff has a right to his lease and whether or not the landlord violated his rights when he was allegedly evicted.  The determination of contracts and violation of rights between California residents is an important state interest." (*Id.*).  Plaintiff appears to argue that California does not have an important state interest because the law on unlawful evictions is "well-established" and this case would have no bearing on that law.  (ECF No. 38, at 16).

The State's interest in this case does not rise to the requisite level of "important state interests," but not for the reasons Plaintiff asserts.  In the Ninth Circuit, "[t]he importance of the [state's] interest is measured by considering its significance broadly, rather than by focusing on the state's interest in the resolution of an individual case." *AmerisourceBergen Corp.*, 495 F.3d at 1150 (quoting *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 619 (9th Cir. 2003)).  "[B]inding precedent prevents [a] court from finding that California's interest in enforcing this one particular judgment—as opposed to a state's wholesale interest in preserving its procedure . . . , or its interest in retaining a particular contempt of court scheme—qualifies as sufficiently 'important' to satisfy *Younger*'s second threshold element." *Id.* (citations omitted).  Defendant does no more than argue that California's interest is the resolution of this individual case.  Accordingly, because there is no sufficiently important State interest that would require *Younger* abstention, the Court **DENIES** Defendant's request to stay this case.

### C. Count 1: 42 U.S.C. § 1983 (individual capacity)

Plaintiff alleges several actions and omissions of Defendants named in their individual capacities amounted to deliberate indifference of Plaintiff's First, Fourth, Fifth,

Sixth, and Fourteenth Amendment rights.[7] (SAC ¶ 173). To state a claim for relief under § 1983, Plaintiff must sufficiently allege "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Plaintiff offers several theories of liability under § 1983. First, Plaintiff alleges that Defendants violated his First Amendment rights under the Free Exercise Clause by removing him from the rental premises on the Sabbath and forcing Plaintiff to record with a phone on the Sabbath. (SAC ¶¶ 85–86, 89–90, 129–30, 208). Second, Defendant Officers allegedly violated his Fourth Amendment rights by "unlawful[ly] seiz[ing]" his property. (*Id.* ¶¶ 181–82, 206–07). Third, Plaintiff generally alleges violations of his Fifth, Sixth, and Eighth Amendment rights. (*Id.* ¶¶ 173–74). Finally, Plaintiff alleges that Defendant Officers violated his Fourteenth Amendment Equal Protection and Due Process rights (*Id.* ¶ 174).

### 1. First Amendment

"The Free Exercise Clause provides that 'Congress shall make no law … prohibiting the free exercise' of religion." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022) (quoting U.S. Const. amend. I). The Clause is "applicable to the States under the terms of the Fourteenth Amendment." *Id.* To allege a violation under the Free Exercise Clause, a plaintiff must "show[] that a government entity has burdened [his] sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Id.* at 525. A policy is not neutral "if the object of a [policy] is to infringe upon or restrict practices because of their religious motivation." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). "A [policy] is not generally applicable if it, 'in

---

[7] The Defendants named in their individual capacities include: (1) Officer Madison; (2) Officer Andrew Scheidecker; (3) Officer Hibbard; (4) Officer Rayas; (5) Officer Brandon Inzunza; (6) David Nisleit; Chief of Police; (7) Paul Connelly, Executive Assistant Chief; (8) Tina Williams, Patrol Operations Assistant Chief; (9) Benjerwin Manasala, Northern Patrol Captain; (10) and all members of SDPD.

a selective manner [,] impose[s] burdens only on conduct motivated by religious belief.'" *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1079 (9th Cir. 2015) (quoting *Lukumi*, 508 U.S. at 543). "In assessing neutrality and general applicability, courts evaluate both 'the text of the challenged [policy] as well as the effect . . . in its real operation.'" *Parents for Privacy v. Barr*, 949 F.3d 1210, 1234 (9th Cir. 2020) (quoting *Stormans, Inc.*, 794 F.3d at 1076).

Plaintiff claims that Defendants "exploited [his] weaknesses, including his religious beliefs." (SAC ¶ 85). In particular, Plaintiff alleges that Defendant Dup-A-Key harmed him by changing the rental unit's door locks on the Sabbath. (*Id.* ¶ 95). Plaintiff alleges harm from Defendant Rough Rider Real Estate because he "had to record" Defendant's employee drilling of a "No Trespass" sign onto the property on the Sabbath. (*Id.* ¶ 129). Plaintiff further alleges harm from Defendant Police Officers because the alleged unlawful eviction occurred on the Sabbath. (*Id.* ¶ 150–54). However, these actions are not violations under the Free Exercise Clause. Plaintiff has not alleged that Defendants Dup-A-Key and Rough Rider Real Estate were government entities. Nor does Plaintiff sufficiently allege that any government policy was not neutral or not generally applicable. Accordingly, the Court **DISMISSES** Plaintiff's First Amendment § 1983 claims against all Defendants with leave to amend.

### 2. Fourth Amendment

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. The Clause is applicable to the States by the Fourteenth Amendment. *See Ker v. California*, 374 U.S. 23, 30 (1963). "A seizure is a 'meaningful interference with an individual's possessory interests in [his] property.'" *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017) (quoting *Soldal v. Cook County*, 506 U.S. 56, 61 (1992)). "A seizure conducted without a warrant is *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Id.* (quoting *United States v. Hawkins*, 249 F.3d 687, 872 (9th Cir. 2001)).

Defendants argues that there was no seizure because Plaintiff never had a property interest protected by the Constitution in the rental unit. (ECF No. 32-1, at 16). Plaintiff alleges that he had a possessory interest in the rental unit and, because the unit was seized without a warrant, the seizure was *per se* unreasonable under the Fourth Amendment. (SAC ¶¶ 176–82, 191).

Defendant Police Officers' involvement with the alleged eviction does not rise to the level of "meaningful interference" to qualify as a "seizure" under the Fourth Amendment. The facts of *Johnson v. City of Bullhead City, Arizona*, are instructive. 34 Fed. App'x 557, 559 (9th Cir. 2002). In *Johnson*, police officers allegedly seized the plaintiff's personal property by requiring her to leave the property where her effects were held. However, the Ninth Circuit found only a "minimal interference" that "[did] not constitute a seizure for purposes of the Fourth Amendment" because "[t]he officers did not take possession of [plaintiff's] property; they stated no view as to the ownership of the property or as to the right of [a third party] to remove it; and they did not restrict [Plaintiff's] ability immediately to seek legal assistance in order to protect her interest in the property." *Id.* at 559. Plaintiff's allegations go no further than *Johnson*: Plaintiff does not allege that Defendant Police Officers took possession of his property; Plaintiff does not allege that Defendant Police Officers opined on the ownership of the property or as to Dierickx's right to evict him; and Plaintiff does not allege that Defendant Police Officers immediately restricted his ability to seek legal assistance to protect his alleged property interest in the rental unit. Therefore, Plaintiff does not sufficiently allege that Defendant Police Officers conducted a seizure under the Fourth Amendment. Accordingly, the Court **DISMISSES** Plaintiff's Fourth Amendment § 1983 claims against Defendants Police Officers and SDPD Officials with leave to amend.

### 3. Fifth and Sixth Amendments

Under Rule 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a), (d). "[T]he short and plain statement must

provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

Plaintiff insufficiently alleges any violation of his Fifth and Sixth Amendment rights. Plaintiff merely concludes that Defendant Police officers deprived him of those rights. (SAC ¶ 173–74). *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."). Plaintiff's SAC is thus unclear on how each Defendant allegedly violated Plaintiff's Fifth and Sixth Amendment rights. Accordingly, the Court **DISMISSES** Plaintiff's § 1983 claims against Defendants Police Officers and SDPD Officials with respect to any Fifth or Sixth Amendment violations with leave to amend.

### 4. Eighth Amendment

The Eighth Amendment "is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions." *Whitley v. Albers*, 475 U.S. 312, 327 (1986). While Plaintiff claims that Defendants violated his Eighth Amendment rights (SAC, at 44, 58), at no point does Plaintiff allege that he was incarcerated as a result of his interaction with Defendants. Accordingly, the Court **DISMISSES** Plaintiff's § 1983 claims against all Defendants with respect to any Eighth Amendment violation. The Court also finds that amendment would be futile and the Court dismisses these claims without leave to amend.

### 5. Fourteenth Amendment – Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Id.* "Where the challenged governmental policy is 'facially neutral,' proof of its disproportionate impact on an

identifiable group can satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy." *Id.* The Ninth Circuit has "held that § 1983 claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

Plaintiff merely concludes that Defendant Police Officers "treated him differently" because he mentioned to them that "[he] was an Orthodox Jewish person." (*Id.* ¶ 89). Plaintiff only alleges conclusory facts to support the notion that Defendant Police Officers acted with an intent or purpose to discriminate against him because of his religious beliefs. Accordingly, the Court **DISMISSES** Plaintiff's § 1983 claims against Defendants Police Officers and SDPD Officials with respect to violations of the Equal Protection Clause of the Fourteenth Amendment with leave to amend.

### 6. Fourteenth Amendment – Due Process

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law. *Newman v. Sathyavaglswaran*, 287 F.3d 786, 789 (9th Cir. 2002) (quoting U.S. Const. amend. XIV, § 1). Plaintiff must allege "(1) a deprivation (2) of property (3) under color of state law." *Id.* Plaintiff contends that he was denied his Fourteenth Amendment Due Process rights when the Defendant Police Officers participated in the allegedly unlawful eviction on September 2, 2023. (SAC, at 39).

Assuming Plaintiff's September 2, 2023 eviction was unlawful, Plaintiff's SAC fails to sufficiently allege that the Defendant Police Officers participated in the illegal eviction and deprived him of his property. Plaintiff alleges that Anne Dierickx and Defendants Dup-A-Key and Rough Riders Inc. changed the locks to the rental premises. (*Id.* ¶¶ 94, 127). Plaintiff then alleges that Anne Dierickx tossed out his possessions from the property and prevented him from stopping her. (*Id.* ¶ 94). Plaintiff alleges that Defendant Police Officers did not arrive to the scene until after he called for them—some four hours after Plaintiff's things were tossed from the rental unit and the final locks were changed. (*Id.*

¶ 100).  Merely alleging that the Defendant Police Officers arrived at the rental unit and told the Plaintiff to leave after his possessions already had been moved out of the premises is insufficient to claim that the Defendant Police Officers actually participated in the eviction.  *See Anderson v. Lomas*, No. cv-11-1414 SI, 2011 WL 5190044, at *4 (N.D. Cal. Oct. 31, 2011) (finding defendant officers could not be held liable under § 1983 for alleged wrongful eviction where the officer defendants arrived on the scene and told plaintiffs to leave the premises only after plaintiff's possessions were moved out and the locks were changed).  Thus, Plaintiff fails to plausibly allege that Defendant Police Officers were part of the alleged unlawful eviction that deprived him of his property.  Accordingly, the Court **DISMISSES** Plaintiff's § 1983 claims against Defendants Police Officers and SDPD Officials with respect to any Fourteenth Amendment Due Process violations with leave to amend.

### 7.  Acting Under Color of State Law

A non-governmental actor proceeds under the color of state law for purposes of a § 1983 claim where "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008) (en banc)).  "The private actor must meet (1) the state policy requirement, and (2) the state actor requirement."  *Wright v. Serv. Emps. Int'l Union Local 503*, 48 F.4th 1112, 1121 (9th Cir. 2022).  The state actor requirement can be met by using one of four tests: "(1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test."  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (quoting *Franklin v. Fox*, 312 F.3d 423, 444–45 (9th Cir. 2002)).

Only Defendants Dup-A-Key and Rough Rider Real Estate argue that they did not act under the color of state law.  To the extent Plaintiff intended to levy § 1983 claims against these Defendants, those claims must be dismissed because Plaintiff's SAC does not sufficiently allege either Defendant is a state actor under any of the four tests.

### a. Public function test

"Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Wright*, 48 F.4th at 1124 (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003)).

Plaintiff does not allege that either private actor defendant was endowed by the State with governmental powers or functions. Thus, Defendants Dup-A-Key and Rough Rider Real Estate are not state actors under the public function test.

### b. Joint action test

"The joint action test asks 'whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights.' This requirement can be satisfied either "by proving the existence of a conspiracy or by showing that the private party was 'a willful participant in joint action with the State or its agents.'" *Id.* (quoting *Franklin*, 312 F.3d at 445).

Plaintiff merely asserts the existence of a conspiracy between Defendants Dup-A-Key, Rough Rider Real Estate, the Defendant Police Officers, and Anne Dierickx. (SAC ¶¶ 8, 77–78, 90, 131, 190–203). Because this is merely a conclusory allegation, the Court is not required to and will not accept this statement as true. *See In re Gilead Scis. Secs. Litig.*, 536 F.3d at 1055. Plaintiff also fails to allege that Defendants Dup-A-Key and Rough Rider Real Estate were willful participants in joint action with the State or its agents. Plaintiff's SAC does not indicate any action or participation by any employee of Defendants Dup-A-Key and Rough Rider Real Estate from the time Defendant Police Officers first arrived on the scene. (*see generally* SAC ¶¶ 100–71). Accordingly, the Court finds that Defendants Dup-A-Key and Rough Rider Real Estate are not state actors under the joint action test.

### c. State compulsion test

The state compulsion test is satisfied "where the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must

in law be deemed that of the State." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 748 (9th Cir. 2020) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

Plaintiff does not allege that the State exerted any coercive power or significant encouragement over Defendants Dup-A-Key and Rough Rider Real Estate. Thus, Defendants Dup-A-Key and Rough Rider Real Estate are not state actors under the state compulsion test.

### d.  Governmental nexus test

Finally, the governmental nexus test requires the Plaintiff to allege "that the private actor is 'entwined with governmental policies, or . . . [the] government is entwined in [the private actor's] management or control.'" *Webber v. First Student, Inc.*, 928 F. Supp. 2d 1244, 1260 (D. Or. 2013) (quoting *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). This Circuit considers four factors "when determining whether entwinement exists: (1) whether the organization is primarily made up of state institutions; (2) whether state officials control the organization's decision making; (3) whether state institutions largely generate the organization's funds; and (4) whether the organization is acting in place of a traditional state actor." *Webber*, 928 F. Supp. 2d at 1260 (citing *Villegas*, 541 F.3d at 955)).

Plaintiff alleges no entwinement between the government defendants and Defendants Dup-A-Key and Rough Rider Real Estate. The greatest degree of interaction Plaintiff alleges are conclusory statements that a conspiracy existed between the Defendants. (SAC ¶¶ 8, 77–78, 90, 131, 190–203). But even a conspiracy, accepted as true, would be insufficient to show entwinement because it would not show the government's management or control of the private actors. Accordingly, the Court finds that Defendants Dup-A-Key and Rough Rider Real Estate are not state actors under the Governmental nexus test.

### e. *State Actor – Conclusion*

To the extent Plaintiff intended to levy his Count 1 § 1983 claims against Defendants Dup-A-Key and Rough Rider Real Estate, those claims are **DISMISSED** with leave to amend due to Plaintiff's failure to show that they acted under the color of state law.

### D. Count 5: *Monell* Claims

Plaintiff also alleges *Monell* claims against Defendants SDPD, City of San Diego, and Chief Nisleit on the theories that the SDPD failed to adequately train, supervise, or were negligent in "the hiring and retention of the individual officer defendants." (SAC, at 58). A municipality cannot be vicariously liable under § 1983 for the acts of its employees, but a municipality can be liable for deprivations of constitutional rights deriving from the execution of a municipality's policies or customs. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To state a *Monell* claim under § 1983, a plaintiff must sufficiently allege "(1) he was deprived of a constitutional right; (2) the [local government] had a policy; (3) the policy amounted to deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). The plaintiff must show a "direct causal link" between the policy and the constitutional deprivation. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc).

"A 'policy' is 'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in questions.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006)). A plaintiff can satisfy *Monell*'s policy requirement in one of three ways. First, a plaintiff can show that a local government acted "pursuant to an expressly adopted official policy." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (quoting *Thomas v. Cnty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014)). Second, "a public entity may be held liable for a 'longstanding practice or custom.' Such circumstances may arise when,

for instance, the public entity 'fail[s] to implement procedural safeguards to prevent constitutional violations' or, sometimes, when it fails to train its employees adequately." *Id.* (citations omitted). Third, a plaintiff can show that "the individual who committed the tort was an official with final policy-making authority" or that "such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* at 974 (quoting *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010)).

Plaintiff alleges a "policy" under an express and longstanding practice or custom theory, but not under a final policy making authority or ratification theory. (SAC ¶¶ 204–12). For the reasons stated below, Plaintiff fails to plausibly allege that any of these Defendants had a policy that caused him a constitutional injury under any theory.

### 1. Expressly Adopted Policy

First, Plaintiff fails to identify any expressly adopted policy by any Defendant. In his SAC, Plaintiff identifies Information Bulletin No. 2022-DLE-05—a notice promulgated by the California Department of Justice to all California Chiefs of Police and Sheriffs—as the policy Defendant SDPD either "failed to adopt," adopted but failed to train its officers, or failed to "adequately supervise" its officers to ensure that it was followed. (SAC, at 58–61). Plaintiff, however, does not allege that Defendant SDPD ever "expressly adopted" this notice as an official policy.

Plaintiff also asserts that Defendant Police Officers were "following practices and procedures and policies of the San Diego Police Department approved and promulgated by Chief of Police David Nisleit, the City of San Diego, and the San Diego PD." (SAC ¶¶ 30–31). Because this is a conclusory allegation, the Court declines to accept the allegation as true. *See In re Gilead Scis. Secs. Litig.*, 536 F.3d at 1055. Accordingly, Plaintiff fails to allege a *Monell* claim under an expressly adopted policy theory.

### 2. Longstanding Practice or Custom: Failure-to-train Theory

"Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *Doughtery v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *City of Canton v.*

*Harris*, 489 U.S. 378, 390 (1989). "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153–54 (9th Cir. 2021). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). "[G]enerally, a single instance of unlawful conduct is insufficient to state a claim for municipal liability under section 1983." *Benavidez*, 993 F.3d at 1154. Single-incident liability under a failure-to-train theory is inapplicable where "[local government] employees are not making life-threatening decisions." *Id.* at 1154–55.

Plaintiff fails to sufficiently allege a *Monell* claim based on a failure-to-train theory for any Defendant. First, for the reasons stated above, Plaintiff has not adequately alleged any constitutional injury. Second, Plaintiff only supports his failure-to-train theory with a single incident—the September 2, 2023 incident involving all Defendant Police Officers. (SAC ¶ 34). While Plaintiff alleges that he was intimidated by the Defendant Police Officers,[8] the Officers' alleged activities do not rise to the level of life-threatening decision-making that "could reflect the [local government's] deliberate indifference to the 'highly predictable consequence' [of] violations of constitutional rights." *Connick*, 563 U.S. at 63–64. Therefore, Plaintiff fails to allege any basis for a *Monell* violation under a failure-to-train theory.

---

[8] Plaintiff noted Defendants Inzunza's and Madison's "fighting stance" (SAC ¶ 103), Defendants Hibbard's and Rayas' "menacing gestures" (*id.* ¶ 104), Defendant Inzunza's "black gloves" (*id.* ¶ 198), Defendant Raya's tight "clutching" of his club (*id.*), and Defendant Hibbard's "imposing figure" (*id.*) in his SAC. However, Plaintiff also alleges that Defendant Scheidecker "passively evict[ed] Plaintiff without aggressively using physical force." (*Id.* ¶ 112).

24-cv-137-DMS-DDL

Furthermore, "[m]ere negligence will not suffice to show *Monell* liability" under a failure-to-train theory. *Benavidez*, 993 F.3d at 1153. Plaintiff does not allege more than negligence in his SAC. (SAC, at 62) (requesting relief for "negligence in failing to train . . . the individual Police Officer Defendants and the supervising Police Officer Defendants"). Therefore, Plaintiff fails to sufficiently allege a *Monell* violation under a failure-to-train theory.

Accordingly, the Court **DENIES** Plaintiff's Count 5 as to all Defendants with leave to amend.[9]

### E. Count 2: Bane Act

#### 1. Liability Under the Bane Act

The Thomas Bane Civil Rights Act ("Bane Act") is codified in California Civil Code § 52.1. "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., "threats, intimidation or coercion"), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law.'" *Cornell v. City and Cnty. of San Francisco*, 17 Cal. App. 5th 766, 791–92 (2017) (quoting Cal. Civ. Code § 52.1). Violations of the federal and California Constitution are all Bane Act violations. *See* Cal. Civ. Code § 52.1(b). "The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022).

The Ninth Circuit has held that "the Bane Act does not require the 'threat, intimidation[,] or coercion element of the claim to be transactionally independent from the constitutional violation alleged" so long as the claimant shows the defendant had a

---

[9] Additionally, Plaintiff's *Monell* claims are deficient in another respect. Municipal liability is "contingent on a violation of constitutional rights." *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994). Plaintiff's failure to allege any constitutional violation, as discussed above, is thus fatal to his *Monell* claims. The Court would deny Plaintiff's *Monell* claims on this ground as well.

"specific intent" to commit the constitutional violation. *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). The specific intent requirement is satisfied where the defendant acted with "[r]eckless disregard of the right at issue." *Estate of Serna v. County of San Diego*, No. 20-cv-2096-LAB-MSB, 2022 WL 827123, at *8 (S.D. Cal. Mar. 18, 2022) (quoting *Cornell*, 17 Cal. App. 5th at 804) (alteration in original).

Unlike a § 1983 claim, a defendant can be liable under the Bane Act "whether or not acting under the color of law." Cal. Civ. Code § 52.1(b). Additionally, a local government can be vicariously liable for its employees' Bane Act violations under a theory of respondeat superior. See *Gant v. Cnty. of Los Angeles*, 772 F.3d 608 (9th Cir. 2014) (explaining that "[u]nder California law, public entities are liable for actions of their employees within the scope of employment," including for Bane Act claims) (citing Cal. Gov't Code § 815.2(a)). The same appears to be true for private employers under California law. *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 296 (Cal. 1995) (holding a private employer liable for the intentional torts of its employees committed within the scope of employment); *see M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 897 (N.D. Cal. 2013) (finding a private employer vicariously liable under a respondeat superior theory for the Bane Act violations of its employees).

### 2. Constitutional or Statutory Rights

Plaintiff alleges the following constitutional violations under the Bane Act: "(1) right to free exercise of religion; (2) right to petition the government for redress of grievances; (3) right to equal protection of the laws; (4) right of procedural due process; and (5) right of substantive due process as guaranteed by the laws of California and the United States and California Constitutions." (SAC ¶ 213). Plaintiff further alleges "that Defendants wrongfully denied Plaintiff his property reentry rights and favored the landlord simply because the landlord demanded it. According to Plaintiff, Defendants sided with landlord and threatened Plaintiffs with false arrest, bodily harm, and they separated him from his personal property by participating together with his landlord in the eviction performed on the Jewish Sabbath." (*Id.* ¶ 214).

23

As discussed above, the Court finds that Plaintiff fails to state a § 1983 claim with respect to his free exercise, equal protection, and procedural due process rights. Accordingly, Plaintiff's alleged Bane Act violations as to those rights are dismissed. As for Plaintiff's assertions regarding his "right to petition the government for redress of grievances" and "property reentry rights," (*Id.* ¶¶ 213–14), Plaintiff fails to cite any statutory or constitutional provision to support the existence of these rights. While Plaintiff invokes substantive due process, nothing in his SAC resembles any of the fundamental liberty interests that are protected by his substantive due process rights. *See Franceschi v. Yee*, 887 F.3d 927, 937 (9th Cir. 2018) ("Substantive due process has . . . been largely confined to protecting fundamental liberty interests, such as marriage, procreation, contraception, family relationships, child rearing, education and a person's bodily integrity, which are 'deeply rooted in this Nation's history and tradition.'" (quoting *Moore v. East Cleveland*, 431 U.S. 494, 503 (1977))). Accordingly, the Court **DENIES** Plaintiff's Bane Act Claims as to all Defendants with leave to amend.

## F. Count 3: Conversion of Chattel

Under California law, the tort of conversion of chattel "comprises of three elements: '(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages.'" *Voris v. Lampert*, 7 Cal. 5th 1141, 1150 (Cal. 2019). The parties contest the second element of conversion. Plaintiff alleges that "Defendants took possession of Plaintiff's . . . personal property." (SAC, at 55–56). Defendants argue that they never "prevent[ed] Plaintiff from accessing his belongings." (ECF No. 32-1, at 24). Furthermore, Defendant City of San Diego argues that it is immune from all state law claims under Cal. Gov't Code § 821.6 and §815.2.[10]

---

[10] The California Supreme Court has recently clarified that "section 821.6 does not broadly immunize police officers or other public employees for any and all harmful actions they may take in the course of investigating crime." *Leon v. Cnty. of Riverside*, 14 Cal. 5th 910, 915 (Cal. 2023). Defendant City of San

Defendants are correct. Plaintiff only offers conclusory allegations that any Defendant actually disposed of his property. These conclusory statements are contradicted by Plaintiff's SAC, since it alleges that it was his landlord and not any of the Defendants who removed his personal belongings from the rental unit. (SAC ¶ 94). Plaintiff also alleges that he was able to retain his tossed belongings because he was able to pack them away in garbage bags. (*Id.* ¶ 111). Plaintiff's SAC alleges only one instance of a Defendant possessing his belongings—when Officer Madison temporarily possessed Plaintiff's "small pocketknife" for safety reasons. (SAC, at 76). However, Plaintiff acknowledges his knife was returned to him. (*Id.*).

Nonetheless, Plaintiff's conversion claim as to Officer Madison's temporary possession of the knife is still deficient because he has improperly alleged damages from this alleged conversion. "[A] plaintiff in an action for conversion may recover either (1) the value of the property at the time of conversion, with interest, or (2) 'an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; . . . .' In addition to either of the above, a plaintiff may also receive a fair compensation for the time and money properly expended in pursuit of the property." *Krueger v. Bank of Am.*, 145 Cal. App. 3d 204, 215 (Cal. Ct. App. 1983) (quoting Cal. Civ. Code § 3336).

Plaintiff claims harm from Officer Madison's temporary possession of his knife because she "falsely certified" that she possessed it for her safety and used this false

---

Diego appears to argue that Defendant Police Officers' actions were part of an "initial proceeding" and thus immune under § 821.6. (ECF No. 32, at 33). However, "[b]efore charges are filed, the actions of the police and the prosecutor are merely investigatory." *Id.* at 921 (quoting *Van Audenhove v. Perry*, 11 Cal. App. 5th 915, 924 (Cal. Ct. App. 2017). No charges were filed in this case. Accordingly, the Court does not find that Cal. Gov't Code § 821.6 immunizes Defendant City of San Diego from Plaintiff's state law claims. Because Defendant City of San Diego's claim of immunity under Cal. Gov't Code § 815.2 relies on immunity under § 821.6, the Court also does not find Defendant City of San Diego to be immune under § 815.2.

information to "'bolster' her account of the illegal eviction which caused Plaintiff to become separated from his property." (SAC, at 55). This harm is certainly not the value of the property at the time of conversion, with interest. Plaintiff also does not allege that this "loss" was the natural, reasonable, and proximate result of the temporary possession. Thus, Plaintiff's harm does not fall under any of the categories of damages Plaintiff can recover from a conversion claim. Accordingly, Plaintiff's Count 3 is **DISMISSED** as to all Defendants with leave to amend.

### G. Count 4: Civil Conspiracy

A "[civil] [c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (Cal. 1994). "Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort." *Id.* at 511. The elements of civil conspiracy are "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (Cal. App. Ct. 1995).

"Even in a complaint, formulaic recitation and 'conclusory statements' will not suffice to allege conspiracy plausibly." *United Bhd. of Carpenters & Joinders of Am. v. Building & Cont'l Trade Dep't*, 770 F.3d 834, 842 (9th Cir. 2014) (quoting *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008)). "A complaint must 'answer the basic questions: who, did what, to whom (or with whom), where, and when? Bare assertions of 'agreement,' or identifications of particular persons as 'co-conspirators,' will not suffice." *Id.* (quoting *Kendall*, 518 F.3d at 1048) (internal citations omitted). "A party seeking to establish civil conspiracy 'must show that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it. It is not enough that the [conspirators] knew of an intended wrongful act, they must agree-expressly or tacitly—to

achieve it." *AREI II Cases*, 216 Cal. App. 4th 1004, 1022 (Cal. App. Ct. 2013) (quoting *Choate v. Cnty. of Orange*, 86 Cal. App. 4th 312, 333 (Cal. App. Ct. 2000)). Despite these requirements, "[i]t must be recognized . . . that because of the very nature of a conspiracy, 'its existence must often be inferentially and circumstantially derived from the character of the acts done, the relations of the parties and other facts and circumstances suggestive of concerted action.'" *Id.* (quoting *Schessler v. Keck*, 271 P.2d 588, 592 (Cal. App. Ct. 1954)). "[A] complaint is sufficient if it apprises the defendant of the 'character and type of facts and circumstances upon which she was relying to establish the conspiracy.'" *Id.* (quoting *Schessler*, 271 P.2d at 592).

First, as to all non-police-officer Defendants, Plaintiff's SAC only alleges conclusory facts or circumstances to support the formation of a conspiracy. Plaintiff has therefore failed to sufficiently allege any facts supporting an inference of conspiracy to all non-police-office Defendants. Accordingly, for all non-police-officer Defendants, the Court **DISMISSES** Plaintiff's Count 4 with leave to amend.

Second, as to Defendant Police Officers, Plaintiff's SAC does not sufficiently allege facts or circumstances that would permit a reasonable inference of conspiracy between the Defendants. Plaintiff alleges that the Defendant Police Officers' tardiness in their response, their inclination to side with the landlord after a brief investigation, the notion that the responding police officers were not assigned to the rental unit's neighborhood, and the construction of the police report (which included the landlord's driver's license information despite the Defendant Police Officers' inability to initially contact the landlord and excluded Plaintiff's assertion that the eviction was a race-based hate crime), are all clear indicia of agreement between the landlord and the Defendant Police Officers. (SAC, at 55–58). However, these alleged facts do not show the kind of close and extensive involvement that would sufficiently support a reasonable inference of conspiracy. *See AREI II*, 216 Cal. App. 4th at 1022–23 (finding reasonable inference of a co-conspirator's knowledge of scheme from co-conspirator's alleged close involvement with and extensive

role in said scheme). Accordingly, as to the Defendant Police Officers, the Court **DISMISSES** Plaintiff's Count 4 with leave to amend.

Furthermore, a civil conspiracy claim must be "activated by the commission of an actual tort." *Applied Equip. Corp.*, 7 Cal. 4th at 511. Because the Court dismisses Counts 2 and 3 with leave to amend, Plaintiff's civil conspiracy claims that rely on common-law conversion and the Bane Act would also be dismissed on this ground.[11]

### H. Plaintiff's Class Action Claims

Defendants also move to dismiss Plaintiff's class action allegations on the grounds that a pro se Plaintiff cannot adequately represent a class. While most challenges to class certification are not ripe for determination at the pleading stage, courts in this district have routinely dismissed class allegations with leave to amend when the pleadings show that the proposed class cannot be certified. *See Dunsmore v. San Diego Ctny. Sheriff's Dept*, No. 20-cv-406-AJB-DDL, 2023 WL 25717, at *2 (S.D. Cal. Jan. 3, 2023) (noting that non-attorney "pro se litigants are not 'adequate' class representatives under Federal Rules of Civil Procedure 23(a)"); *Austin v. Brown*, No. 18-cv-600-WQH-JLB, 2019 WL 2868925, at *7 (S.D. Cal. July 3, 2019) (same); *Stewart v. Saint Vincent de Paul*, No. 12-cv-642 BEN (KSC), 2013 WL 144287, at *3 (S.D. Cal. Jan. 11, 2013) (same); *see e.g.*, *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) ("[C]ourts have routinely adhered to the general rule prohibiting *pro se* plaintiffs from pursing claims on behalf of others in a representative capacity."). The issue is whether Plaintiff, proceeding as an attorney pro se litigant, can adequately represent the class he proposed under Rule 23(a)(4).

Adequate representation under Rule 23(a) is determined under a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class

---

[11] Because the Court dismisses all civil conspiracy claims for failure to sufficiently allege a conspiracy, the Court declines to address Defendants' arguments that Plaintiff failed to sufficiently allege the underlying torts in his civil conspiracy claims as to (1) wrongful eviction under California Civil Code § 789.3, (2) violations of the California state constitution; (3) violations of California Penal Code §§ 418, 484, 518, and 602.5; and (4) violations of California Civil Code §§ 1940.2.

members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023).  Relevant to the second inquiry is the "long-standing general prohibition against . . . attorneys acting as both class representative and counsel for the class." *Torrez v. Corrections Corp. of Am.*, No. cv-09-2298, 2010 WL 320486 at *1 (D. Ariz. Jan. 20, 2010) (quoting *Huddleston v. Duckworth*, 97 F.R.D. 512, 514 (N.D. Ind. 1983)).

Although Plaintiff is an attorney, he makes no representation that he has any experience with class action litigation.  Plaintiff instead claims that he "has retained counsel competent and experienced in class action litigation," (SAC, at 42), yet no such independent counsel has made an appearance in this action.  The Court does not find that Plaintiff, acting alone, can adequately represent the interests of his proposed class under Rule 23(a)(4).  The Court also agrees with the long-standing general prohibition against attorneys acting as both class representative and counsel for the class.  Accordingly, Plaintiff's class action claims are **DISMISSED** with leave to amend.

## I.  Anne Dierickx is a Not a Necessary Party

Defendants also argue that Anne Dierickx is a necessary party who must be joined to this case.  In particular, Defendants Rough Rider Real Estate and Dup-A-Key argue that this Court cannot afford complete relief without Ms. Dierickx and that the defendants' ability to protect their interest is impeded by her absence.  ECF No. 31-1, at 10; ECF No. 34, at 12.  Defendant City of San Diego argues that Ms. Dierickx is a necessary party because she has an interest in the controversy (i.e. "her property, her purported lease with Plaintiff, and her actions which caused Plaintiff to allegedly be evicted from the house"), and any determination by this Court as to whether there was an unlawful eviction "could potentially affect the landlord's rights and could also leave Plaintiff and the landlord with inconsistent obligations." (ECF No. 32-1, at 34–35).  Plaintiff disagrees, noting that Ms. Dierickx has not yet claimed an interest in the action, complete relief can be afforded in her absence because Plaintiff is seeking damages and Defendants are joint tortfeasors, and that Ms. Dierickx does not have a legally protected interest in the action such that

proceeding in her absence would subject an existing party to inconsistent obligations. (ECF No. 38, at 5–9).

Ms. Dierickx is not a necessary party to this case. First, Ms. Dierickx is not a necessary party under Rule 19(a)(1)(a) because the Court can afford complete relief in her absence. If Plaintiff can "recover all of [his] damages from [the named Defendants]" without naming a nonparty as a defendant, then the nonparty is not a necessary party under Rule 19(a)(1)(A)." *Ward v. Apple*, 791 F.3d 1041, 1049 (9th Cir. 2015), *abrogated on other grounds*, *Sperring v. LLR, Inc.*, 995 F.3d 680, 682 (9th Cir. 2021). Plaintiff's requested injunctive relief is directed solely at Defendant City of San Diego. Plaintiff's damages requests against the named Defendants are based on the named Defendants' alleged actions, not the actions of Ms. Dierickx. The one exception is Plaintiff's civil conspiracy claims, where Plaintiff alleges that Ms. Dierickx entered into a conspiracy with some of the named Defendants. (SAC, at 55–58). Nonetheless, complete relief can still be afforded because co-conspirators are jointly and severally liable for the torts of their co-conspirators. *See Kenne v. Stennis*, 230 Cal. App. 4th 953, 968 (Cal. Ct. App. 2014).

Second, Ms. Dierickx is not a necessary party under Rule 19(a)(1)(B). An absent party must first claim an interest in the litigation. *See Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983) ("Subparts (i) and (ii) are contingent, however, upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action."); *United States v. Bowen*, 172 F.3d 682, 688–89 (9th Cir. 1999) ("[The absent party] was aware of this action and chose not to claim an interest. That being so, the district court did not err by holding that joinder was 'unnecessary.'"). Defendants also "cannot claim that [the absent party] ha[s] a legally protected interest in the action unless the [nonparty itself] claim[s] that [it] ha[s] such an interest." *In re Cnty. of Orange*, 262 F.3d 1014, 1023 (9th Cir. 2001). Since Ms. Dierickx has not yet claimed an interest in this litigation, this Court cannot conclude that she has a legally protected interest under Rule 19(a)(1)(B).

However, if Ms. Dierickx had claimed an interest in this litigation, she would be a necessary party under Rule 19(a)(1)(B)(i). A nonparty claiming an interest in the litigation is a necessary party under Rule 19(a)(1)(b)(i) if "disposing of the action in the [nonparty's] absence may as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(b)(i). "As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit." *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999). "In determining whether an absent party is adequately represented by an existing party, [a district court] consider[s] whether 'the interests of a present party to the suit are such that it will undoubtedly make all' of the absent party's arguments; whether the party is 'capable of and willing to make such arguments'; and whether the absent party would 'offer any necessary element to the proceedings' that the present parties would neglect.'" *Id.* (quoting *Shermoen v. U.S.*, 982 F.2d 1312, 1318 (9th Cir. 1992)). A necessary element can be "offer[ing] new evidence in the judicial proceedings that would materially affect the outcome of claims." *Alto v. Black*, 738 F.3d 1111, 1129 (9th Cir. 2013).

With respect to Plaintiff's civil conspiracy to unlawfully evict Plaintiff claim, Ms. Dierickx interests are not adequately represented by the Defendants. To be sure, Ms. Dierickx's and the Defendants' interests are currently aligned to oppose Plaintiff's allegations of conspiracy and the underlying tort of unlawful eviction. Defendants can and have made such arguments. *See* ECF No. 31-1, at 11–15, 22–23; ECF No. 32-1, at 25–26; ECF No. 34, at 13–17, 24–25. However, Ms. Dierickx, as Plaintiff's alleged landlord, would likely have access to and "offer new evidence in the judicial proceeding[] that would materially affect the outcome of [this] claim[]." *Alto*, 738 F.3d at 1129. Accordingly, if Ms. Dierickx claimed an interest in this case, she would be a necessary party under Rule 19(a)(1)(B)(i).

Accordingly, the Court finds that Ms. Dierickx is not a necessary party to this case on the present record and **DENIES** Defendants' 12(b)(7) motions.

# IV.    CONCLUSION AND SUMMARY

Based on the foregoing,

1.  The Court **DISMISSES** Plaintiff's § 1983 claims for violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments against all Defendants with leave to amend.  The Court **DISMISSES** Plaintiff's § 1983 claim for violation of the Eighth Amendment without leave to amend.

2.  The Court **DISMISSES** Plaintiff's Bane Act claims against all Defendants with leave to amend.

3.  The Court **DISMISSES** Plaintiff's conversion of chattel claims against all Defendants with leave to amend.

4.  The Court **DISMISSES** all Plaintiff's civil conspiracy claims against all Defendants with leave to amend.

5.  The Court **DISMISSES** Plaintiff's *Monell* claims for violation of the First, Fourth, Fifth, and Fourteenth Amendments with leave to amend.  The Court **DISMISSES** Plaintiff's *Monell* claim for violation of the Eighth Amendment without leave to amend.

6.  The Court **DISMISSES** Plaintiff's class claims with leave to amend.

7.  The Court **DENIES** Defendants' motions to dismiss pursuant to Rule 12(b)(7).

   **IT IS SO ORDERED**.

Dated:  November 4, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court

24-cv-137-DMS-DDL