# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

MARSHALL A. WEXLER,

                Plaintiff,

v.

TONI WOOD; COUNTY OF SAN DIEGO; SUMMER STEPHAN, DISTRICT ATTORNEY FOR THE COUNTY OF SAN DIEGO; TWO UNNAMED BUREAU OF INVESTIGATION OFFICERS FOR THE COUNTY OF SAN DIEGO; CITY OF SAN DIEGO; SAN DIEGO POLICE DEPARTMENT; CHIEF OF POLICE DAVID NISLEIT; DEPARTMENT OF OPERATIONS EXECUTIVE ASSISTANT CHIEF PAUL CONNELLY; PATROL OPERATIONS ASSISTANT CHIEF TINA WILLIAMS; NORTHERN PATROL CAPTAIN BENJERWIN MANANSALA; POLICE OFFICER CHRISTOPHER TIVANIS; POLICE OFFICER JONATHAN WIESE; OFFICER MADISON BADGE # 1546; OFFICER ANDREW SCHEIDECKER BADGE # 6827; OFFICER HIBBARD BADGE # 1546;

Case No.:  24-cv-0137-BJC-DDL

**ORDER GRANTING MOTIONS TO DISMISS WITHOUT PREJUDICE [ECF NOS. 64, 66, 67, 68.]**

OFFICER RAYAS BADGE #1680; OFFICER BRANDON INZUNZA BADGE #1515; OTHER UNKNOWN OFFICERS DETECTIVES SERGEANTS LIEUTENANTS AND CAPTAINS OF SAN DIEGO POLICE DEPARTMENT; DUP-A-KEY INC,; VINCENT FISK; WESTON DANIEL FISK as owners and operators of DUP-A KEY INC., ROUGH RIDER REAL ESTATE, INC./DBA WIESE & ASSOCIATES; ERIC WIESE as owner and operator of Rough Rider Real Estate, Inc.; ASSISTANT CHIEF OF POLICE; TODD GLORIA, mayor of San Diego, California, CHLOE MADISON, Chief of Public Affairs.

Defendants.

Pending before the Court are four motions to dismiss[1] and Plaintiff's Third Amended Complaint ("TAC") under Federal Rules of Civil Procedure 8, 12(b)(6).[2] ECF Nos. 64, 66, 67, 68. Plaintiff, proceeding pro se and with permission of the Court, filed an omnibus opposition to all four motions. ECF No. 71. Defendants Dup-A-Key, Rough Rider Real Estate, and City of San Diego filed replies. ECF Nos. 73, 74, 75. For the following reasons, the Court **GRANTS** Defendants' motions to dismiss.

---

[1] The motions to dismiss were filed by Defendant Toni Wood ("**Wood**")[ECF No. 64]; Defendants Dup-A-Key, Vincent Fisk, and Weston Fisk ("**Dup-A-Key Defendants**") [ECF No. 66]; Defendants Rough Rider Real Estate dba Wiese & Associates, Erik Wiese ("**Rough Rider Defendants**") [ECF No. 67]; Defendants City of San Diego, Chief Nisleit, Chief Connelly, Chief Williams, Captain Manansala, Officer Madison, Officer Scheidecker, Officer Hibbard, Officer Rayas, Officer Inzunza, Officer Tivanis, Mayor Todd Gloria, and Chloe Madison (collectively "**City Defendants**") [ECF No. 68].

[2] Defendant Wood argues that the TAC should be dismissed for failure to add a necessary party under FRCP 12(b)(7). ECF No. 64 at 6. The Court previously found no merit to this argument in the prior order granting in part and denying in part the motions to dismiss. ECF No. 43. No new arguments have been advanced here, therefore, the Court rests on its prior determination and DENIES Wood's motion to dismiss on this ground.

## I. FACTUAL BACKGROUND

This case arises from a failed landlord tenant agreement. Plaintiff Marshall Wexler, a lawyer admitted to practice in both New York and California, asserts that he attempted to rent an apartment at 1311 Diamond Street, San Diego, CA 92109 from prospective landlord Anne Dierickx, who co-managed the property with Defendant Rough Rider Real Estate. TAC ¶ 52. On August 24, 2023, Dierickx asked her neighbor, Defendant Toni Wood, to show the apartment to Plaintiff, who claims he told Defendant Wood that he was Jewish while viewing the apartment. *Id*. ¶ 54. After seeing the apartment, Plaintiff attempted to renegotiate the cancellation terms of the Agreement with Dierickx via email, but Dierickx did not agree to the additional terms. *Id.* at 21-22.

On August 25, 2023, Plaintiff sent a copy of the Residential Lease-Rental Agreement and Deposit Receipt ("Agreement") to Dierickx with only Plaintiff's signature on it. *Id.* ¶ 57, Ex. C. at 28-29. The Agreement stated that the monthly rent would be $2,500, and a Security Deposit of $3,750 was required before the keys would be handed over. *Id.* at 28. Plaintiff and Dierickx exchanged multiple texts in which Plaintiff stated he did not have the required $6,250 but could send $3,000 immediately. *Id.* at 18-20. Dierickx accepted a partial deposit and Plaintiff sent $2,999 via Zelle to Diericks on August 25, 2023. Ex. C at 25. Dierickx stated multiple times that Plaintiff would not get a key and code to the apartment until the full $6,250 was deposited in her account. *Id.* at 26. Defendant Wood contends that Plaintiff went to her house later on August 25, 2023, "claiming he deserved the keys" to the unit because he had sent the deposit, the rent, and he had signed a lease. ECF No. 64 at 2. Defendant Wood called Dierickx to report Plaintiff's behavior. *Id.*

On August 26, 2023, Dierickx sent a detailed email to Plaintiff stating that there was no valid agreement because Plaintiff had misrepresented his financial status to her, he had harassed Defendant Wood by showing up to her home the previous evening, he attempted to renegotiate the cancellation terms of the agreement in bad faith, and he had only made a partial deposit. *Id.* Dierickx told Plaintiff he "DID NOT FULFILL [HIS]

OBLIGATIONS" and "we have no contract." *Id*. Dierickx explicitly instructed Plaintiff not to enter her property and that it would be considered criminal trespass if he did so. *Id*. She refused to give Plaintiff the keys to the unit and stated she would contact her bank and send back the $3,000 deposit. *Id*.

Later that day, Plaintiff contacted the San Diego Police Department to "recover his money or move into the apartment." ECF No. 48 ¶ 77. Plaintiff informed the police officers that he was Jewish and that it was the Sabbath. *Id*. ¶79. Plaintiff claims the police officers "provided no assistance." *Id*. ¶ 78. Plaintiff claims he sought help from the San Diego Police Department again on August 27, 2023, but the officers again were no help. *Id*. ¶ 82.

Plaintiff alleges that he waited until August 28, 2023, "to see if the landlord would just give him a refund or the keys," but Dierickx did not allow him access to the apartment. *Id*. ¶71. Plaintiff alleges that on August 28, 2023, an "unnamed" San Diego Police Officer "granted Plaintiff permission to enter the premises with a locksmith," who "replace[d] the existing rusty, old door lock with a new one." *Id*. On August 29, 2023, Plaintiff claims that he received a phone call from Officer Fernandez, who requested that Plaintiff prove he had authorization to be in the apartment. *Id*. ¶ 85. Plaintiff alleges that Officer Fernandez confirmed Plaintiff was not trespassing and had the right to remain on the property. *Id*. ¶ 91. Officer Fernandez purportedly told Plaintiff that it was a civil matter, not criminal matter, which reinforced Plaintiff's belief that he could legally occupy the premises. *Id*. ¶ 92.

On September 2, 2023, during the Jewish sabbath, Plaintiff asserts that he returned from synagogue to find that Lt. Christopher Tivanian, who he describes as "a coverup artist and a liar," "installed a padlock on Plaintiff's only remaining access point to the apartment. *Id*. ¶ 9. Plaintiff also asserts that Dierickx "forcibly broke into Plaintiff's apartment accompanied by a locksmith working for Dup A Key" and pushed Plaintiff out of the way. *Id*. ¶112. Dierickx allegedly put Plaintiff's belongings in garbage bags and removed them from the apartment. *Id*. ¶ 113, 118. At 7:00 PM, Officers Inzunza,

4

Madison, Scheidecker, Hibbard, Rayas, and "others" arrived on the scene and instructed Plaintiff to leave the property. *Id.* ¶ 126, 127.

Plaintiff claims he "was the victim of a racially motivated conspiracy enterprise" formed at a "dinner or lunchtime" on September 1, 2023, between Dierickx, Defendant Wood, Erik Wies, Jonathan Wiese, and Chris Tinavian, and five conspiring San Diego Police Department officers (Officers Madison, Inzunza, Rayas, Hibbard, and Scheindecker) to facilitate Plaintiff's eviction. *Id.* ¶ 95. The purpose of the conspiracy was allegedly to "further Landlord Dierickx and Toni's [Defendant Wood] aim to prevent Orthodox Jewish people, like Plaintiff, from moving into the 1300 block of Diamond Street." TAC at 4-5, ECF No. 48.

Plaintiff asserts claims pursuant to 42 U.S.C. §1983 for violations of his rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments; violation of Bane Act, Monell; Unruh Civil Rights Act; Discrimination Based on Religion; 42 U.S.C. § 1985; 42 U.S.C. § 1986; 42 U.S.C. §§ 1981, 1982; violation of the Ralph Civil Rights Act Civil Code § 51.7; Fair Housing Act 42 U.S.C. § 3601, and Fair Employment and Housing Act Gov. Code §12900, in addition to conversion of chattels, defamation, conspiracy, contractual interference, intentional infliction of emotional distress, fraudulent misrepresentation, and class action claims.[3]

## II.    PROCEDURAL BACKGROUND

On January 19, 2024, Plaintiff filed his initial Complaint alleging violations of the Civil Rights Act 42 U.S.C. § 1983 and various common law causes of action against the City of San Diego, and various San Diego Police Officers. ECF No. 1. On February 15, 2024, the Court dismissed the action *sua sponte* for Plaintiff's failure to pay the filing fee or submit a Motion to Proceed in forma pauperis. ECF No. 4. On February 21, 2024, Plaintiff filed a First Amended Complaint but did not pay the filing fee again. ECF No.

---

[3] Plaintiff withdraws his class action claims (ECF No. 48-1 at 57) therefore, the Court denies Defendants' motions to dismiss this claim as moot.

5. On March 1, 2024, Plaintiff filed a Second Amended Complaint ("SAC") alleging violations of his civil rights and common law causes of action against the City of San Diego, various San Diego Police Officers, Defendant Weston Daniel Fisk as owner and operator of Dup-A-Key, Defendants Dup-A-Key, Rough Rider Real Estate dba Wiese & Associates, and Erik Wiese as owner and operator of Rough Rider Real Estate, Inc. ECF No. 8. On March 6, 2024, Plaintiff paid the filing fee. ECF No. 9.

Defendants Dup-A-Key, Weston and Daniel Fisk, and the City of San Diego, and San Diego Police Officers filed motions to dismiss the SAC, and the Court granted Defendants' motions to dismiss pursuant to Rule 12(b)(6) and denied Defendants' motions pursuant to Rule 12(b)(7). ECF Nos. 32, 43. On December 2, 2024, Plaintiff filed a notice of appeal to the 9th Circuit Court of Appeals. ECF No. 44. On December 23, 2024, the 9th Circuit dismissed the appeal for lack of jurisdiction because "the order challenged in the appeal is not final or appealable." ECF No. 47.

On December 30, 2024, Plaintiff filed a Third Amended Complaint adding additional claims, seeking $5 million in damages, and adding Defendants Toni Doe[4], Summer Stephan, District Attorney for the County of San Diego, two unnamed "Bureau of Investigation Officers for the Count of San Diego," and Chloe Madison, Chief of Public Affairs. ECF No. 48. On March 12, 2025, Defendant Toni Wood filed a motion to dismiss. ECF No. 64. On March 19, 2025, Defendants Dup-A-Key, Vincent Fisk, and Weston Daniel Fisk filed a motion to dismiss. ECF No. 66. On March 21, 2025, Defendants Rough Rider Real Estate and Erik Wiese filed a motion to dismiss. ECF No. 67. Also on March 21, 2025, Defendants City of San Diego, San Diego Police Department, and other named County Defendants filed a motion to dismiss. ECF No. 68. On April 23, 2025, Plaintiff filed an omnibus response in opposition to the motions. ECF No. 71. Defendants Dup-A-Key, Rough Rider Real Estate, and City of San Diego filed

---

[4] Later identified as Toni Wood.

24-cv-0137-BJC-DDL

replies. ECF Nos. 73-75.

## III. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 8

Defendants City of San Diego and Dup-A-Key argue that the complaint must be dismissed for failure to comply with Rule 8 of the Federal Rule of Civil Procedure. The Court agrees.

Rule 8 requires a complaint to "contain: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Fed. R. Civ. P. 8. Courts may dismiss a complaint that violates Rule 8. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985). Generally, courts have a duty to construe *pro se* pleadings liberally. *See Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003); *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (*per curiam*) (noting that courts hold *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers"). However, "a liberal interpretation of a [*pro se*] complaint may not supply essential elements of the claim that were not initially pled." *See Ivey v. Board of Regents,* 673 F.2d 266, 268 (9th Cir. 1982). Here, Plaintiff is proceeding *pro se*, but he asserts that he is an attorney licensed to practice in both New York and California. Therefore, the Court may consider Plaintiff's legal training and experience when analyzing his complaint. *See Strojnik v. Evans Hotels, LLC,* 2020 WL 2767361, *6 (S.D. Cal. May 28, 2020) (Court considered *pro se* plaintiff's assertions that he was a practicing attorney for more than 40 years when considering his failure to timely serve objections.)

The claims contained within the TAC are repetitive, unclear at times, and consist of conclusory allegations without factual support. Therefore, Plaintiff's Third Amended Complaint fails to comply with Rule 8 and is subject to dismissal. First, the TAC is "unnecessarily voluminous" at 159 pages long, including an additional 34 pages of Exhibits. *Hobbs v. Monterey County Water Resources Agency*, 2024 WL 1382467, * 2 (N.D. Cal. April 1, 2024) (finding that the complaint violated Rule 8 because it was

"unnecessarily voluminous, comprised of 78 pages of at times duplicative and repetitive allegations" and "lists so many statutes and possible causes of action that it inhibits the County's ability to intelligently prepare for its defense."). Next, the TAC includes numerous repetitive allegations. For instance, paragraph 7 is duplicative of paragraph 97. With the exception of a few non-substantive words, paragraphs 8, 9, 11,12, 13, 15, 16, 17, 18, 19, 21, 22, 23 are duplicative of paragraphs 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 110 and 111, respectively. Finally, the inclusion of immaterial accusations, along with multiple causes of action citing numerous statutes in each claim for relief, constitutes the antithesis of Rule 8's requirement of a short and plain statement. *McHenry v. Renne,* 84 F.3d 1172, 1178 (9th Cir. 1996) (dismissal for failure to comply with Rule 8 because "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery.") In claim one, for example, Plaintiff includes multiple causes of action including intentional infliction of emotional distress, violation of the 8th Amendment under 42 U.S.C. § 1983, conversion, violation of the Unruh Civil Rights Act, and failure to provide reasonable accommodations under the FHA and Government Code § 12955, and it is unclear which claims are asserted against which Defendants.

For these reasons, the Court may dismiss the TAC for Plaintiff's failure to comply with Rule 8. However, to the extent the TAC asserts intelligible claims, the Court finds dismissal appropriate for the following reasons.

B. ***Federal Rule of Civil Procedure 12(b)(6)***

Defendants seek dismissal of the complaint for Plaintiff's failure to state a claim as required under FRCP 12(b)(6).[5]

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss

---

[5] Defendants San Diego Police Department, Toni Wood, Weston and Vincent Fisk assert that they should be dismissed from the action because Plaintiff fails to plead sufficient claims against them. The Court agrees and dismisses these Defendants from the action.

24-cv-0137-BJC-DDL

on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." *See also* Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed.R.Civ.P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663-64. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## IV. DISCUSSION

### A. Civil Rights Violations

Throughout the TAC, Plaintiff alleges that various Defendants have violated his civil rights under the Constitution and numerous statutes including: 42 U.S.C. §1983 for violations of his rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, and unlawful eviction, violation of Bane Act, Monell failure to train; Unruh Civil Rights Act, Discrimination Based on Religion; 42 U.S.C. § 1985; 42 U.S.C. § 1986;

24-cv-0137-BJC-DDL

42 U.S.C. §§ 1981, 1982; violation of the Ralph Civil Rights Act Civil Code § 51.7; Fair Housing Act 42 U.S.C. § 3601, and Fair Employment and Housing Act Gov. Code §12900. TAC ¶ 3. The Court will analyze each cause of action in turn below.

### 1. 42 U.S.C. §1983

To state a claim for relief under 42 U.S.C. § 1983, Plaintiff must sufficiently allege "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

### (a) Acting Under Color of State Law

Defendants Dup-A-Key, Rough Rider Real Estate, and Wood argue that they did not act under the color of state law, therefore, any § 1983 claims levied against them by Plaintiff must be dismissed with prejudice. The Court agrees.

A non-governmental actor proceeds under the color of state law for purposes of a § 1983 claim where "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008) (en banc)). "The private actor must meet (1) the state policy requirement and (2) the state actor requirement." *Wright v. Serv. Emps. Int'l Union Local 503*, 48 F.4th 1112, 1121 (9th Cir. 2022). The state actor requirement can be met by using one of four tests: "(1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (quoting *Franklin v. Fox*, 312 F.3d 423, 444–45 (9th Cir. 2002)).

### (i) Public function test

Defendants Dup-A-Key, Rough Rider Real, Estate and Wood are not state actors under the public function test because Plaintiff does not allege that any of these private actor defendants were endowed by the State with governmental powers or functions. *Wright*, 48 F.4th at 1124. Therefore, they did not "become agencies or instrumentalities

24-cv-0137-BJC-DDL

of the State and subject to its constitutional limitations." *Id.*

### (ii) Joint action test

Similarly, there are insufficient allegations to find that Defendants Dup-A-Key, Rough Rider, and Wood satisfy the joint action test. "The joint action test asks 'whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights.' This requirement can be satisfied either "by proving the existence of a conspiracy or by showing that the private party was 'a willful participant in joint action with the State or its agents.'" *Tsao,* 698 F.3d at 1140 (quoting *Franklin*, 312 F.3d at 445). Plaintiff only makes conclusory allegations that there was a conspiracy between Defendants Dup-A-Key, Rough Rider Real Estate, Wood, the Defendant Police Officers, and Anne Dierickx. TAC ¶¶ 6, 95, 97, 128, 228. The Court is not required to accept these statements as true, and declines to do so. *See In re Gilead Scis. Secs. Litig.*, 536 F.3d at 1055.

Plaintiff also fails to allege that Defendants Dup-A-Key, Rough Rider Real Estate, and Wood were willful participants in joint action with the State or its agents. The allegations in the TAC do not describe any action or participation by Wood, or any employee of Defendants Dup-A-Key and Rough Rider Real Estate, from the time Defendant Police Officers first arrived on the scene. TAC ¶¶ 100–137. Accordingly, the Court finds that Defendants Dup-A-Key, Rough Rider Real Estate, and Wood are not state actors under the joint action test.

### (iii) State compulsion test

The state compulsion test is satisfied "where the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed that of the State." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 748 (9th Cir. 2020) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

In the TAC, there are no allegations that the State exerted any coercive power or significant encouragement over Defendants Dup-A-Key, Rough Rider Real Estate, and Wood. Thus, these Defendants are not state actors under the state compulsion test.

Finally, the governmental nexus test requires the Plaintiff to allege "that the private actor is 'entwined with governmental policies, or . . . [the] government is entwined in [the private actor's] management or control.'" *Webber v. First Student, Inc.*, 928 F. Supp. 2d 1244, 1260 (D. Or. 2013) (quoting *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). This Circuit considers four factors "when determining whether entwinement exists: (1) whether the organization is primarily made up of state institutions; (2) whether state officials control the organization's decision making; (3) whether state institutions largely generate the organization's funds; and (4) whether the organization is acting in place of a traditional state actor." *Webber*, 928 F. Supp. 2d at 1260 (citing *Villegas*, 541 F.3d at 955).

Plaintiff includes no allegations of entwinement between the government defendants and Defendants Dup-A-Key, Rough Rider Real Estate, and Wood. Although Plaintiff makes conclusory allegations of a conspiracy, this is insufficient to show entwinement because it does not show the government's management or control of the private actors. Accordingly, the TAC fails to assert sufficient allegations to find that Defendants Dup-A-Key, Rough Rider Real Estate, and Wood are state actors under the Governmental nexus test.

*(v)     State Actor – Conclusion*

To the extent Plaintiff intended to assert § 1983 claims against Defendants Dup-A-Key, Rough Rider Real Estate, and Wood, those claims are **DISMISSED** without leave to amend because the Defendants are not state actors who acted under the color of state law.

*b. First Amendment*

Plaintiff alleges that Defendants violated his First Amendment rights under the Free Exercise Clause by requiring him to use electronics, including his phone, on the Sabbath beginning at sundown on Friday, August 25, 2023, and the following day, and also removing him from the rental premises on the following Sabbath. TAC ¶¶ 16, 20, 62-64,

99, 228, 236-37. The Court disagrees.

"The Free Exercise Clause provides that 'Congress shall make no law . . . prohibiting the free exercise' of religion." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022) (quoting U.S. Const. amend. I). The Clause is "applicable to the States under the terms of the Fourteenth Amendment." *Id.* To allege a violation under the Free Exercise Clause, a plaintiff must "show[] that a government entity has burdened [his] sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Id.* at 525. A policy is not neutral "if the object of a [policy] is to infringe upon or restrict practices because of their religious motivation." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). "A [policy] is not generally applicable if it, 'in a selective manner [,] impose[s] burdens only on conduct motivated by religious belief.'" *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1079 (9th Cir. 2015) (quoting *Lukumi*, 508 U.S. at 543). "In assessing neutrality and general applicability, courts evaluate both 'the text of the challenged [policy] as well as the effect . . . in its real operation.'" *Parents for Privacy v. Barr*, 949 F.3d 1210, 1234 (9th Cir. 2020) (quoting *Stormans, Inc.*, 794 F.3d at 1076).

Here, Plaintiff makes numerous conclusory allegations that the Defendants' actions were based on him being Jewish and observing the Sabbath. For instance, he claims that the "illegal" eviction was timed to coincide "with the Plaintiff's Sabbath" and "constitutes a violation of the Plaintiff's religious freedoms under the First Amendment." TAC ¶ 322. Plaintiff claims that that Defendant Dup-A-Key violated his rights by replacing the rental unit's door locks on the Sabbath. *Id.* ¶ 117, 119. He claims Defendant Rough Rider Real Estate harmed him because he was woken up and "violently intimidated with a hammer and power tools." *Id.* ¶ 98. Plaintiff further alleges harm from Defendant Officers because the alleged unlawful eviction occurred on the Sabbath. *Id.* ¶ 372. Plaintiff further argues that his "illegal eviction and the way he was treated" "reminded him of the Shoah (Holocaust), when Jewish people were forcefully expelled from their homes for no reason other than their identity," claiming there "was an undeniable parallel to these historical events." ECF 48 ¶ 171.

24-cv-0137-BJC-DDL

However, these actions are not violations under the Free Exercise Clause. Plaintiff has not alleged that Defendants Dup-A-Key, Rough Rider Real Estate, and Wood were government entities. Nor does Plaintiff sufficiently allege that any government policy was not neutral or not generally applicable. Finally, Plaintiff has not alleged facts to demonstrate that any Defendant acted in a certain way *because* Plaintiff is Jewish.

Accordingly, the Court **DISMISSES** Plaintiff's First Amendment §1983 claims against the remaining Defendants with leave to amend.

### c. Fourth Amendment

Plaintiff contends that the Defendant Officers "subjected Plaintiff to an unreasonable seizure" because they wrongfully evicted Plaintiff. TAC ¶ 347. The TAC alleges that Plaintiff's "residential real property" was "seized from him without due process in violation of the Fourth Amendment" and that the "police interrogation" violated his "privacy and bodily autonomy rights under the Fourth Amendment as well." TAC ¶ 20. He further asserts that his personal property was seized during the illegal eviction. TAC ¶ 159.

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. The Clause is applicable to the States by the Fourteenth Amendment. *See Ker v. California*, 374 U.S. 23, 30 (1963). "A seizure is a 'meaningful interference with an individual's possessory interests in [his] property.'" *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017) (quoting *Soldal v. Cook County*, 506 U.S. 56, 61 (1992)). "A seizure conducted without a warrant is *per se* unreasonable under the Fourth Amendment— subject only to a few specifically established and well delineated exceptions." *Id.* (quoting *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001)). Seizures by private individuals are not proscribed by the Fourth Amendment unless the private individual is 'acting as an agent of the Government or with the participation or knowledge of any governmental official.' " *United States v. Jacobsen*, 466 U.S. 109, 113–14 (1984).

As a primary matter, the facts as alleged do not support the conclusion that Plaintiff had a lawful possessory interest in the rental unit since the prospective landlord did not

24-cv-0137-BJC-DDL

sign the rental/lease agreement. Therefore, his removal from the property cannot be considered a seizure. According to Plaintiff, the Officers conducted an interview of him, insisted that he leave the residence under penalty of arrest, and required that he remain seated during the "eviction." TAC ¶¶ 109, 134. These allegations, taken as true, do not rise to the level of "meaningful interference" to qualify as a "seizure" under the Fourth Amendment. *Johnson v. City of Bullhead City*, 34 Fed.App'x. 557, 559 (9th Cir. 2002)(Court found no seizure where police officers did not take possession of plaintiff's property during eviction, officers stated no view as to ownership of property, and did not restrict plaintiff's ability to seek legal assistance to protect interest in property.) Plaintiff does not sufficiently allege that Defendant Officers conducted a seizure under the Fourth Amendment. Accordingly, the Court **DISMISSES** Plaintiff's Fourth Amendment § 1983 claims against the remaining Defendants with leave to amend.

### d. Fifth and Sixth Amendments

Plaintiff includes the Fifth and Sixth Amendments in a list of alleged violations of his Constitutional rights by the Officer Defendants, Dup-A-Key, Weston Fisk, and Rough Rider Real Estate. *Id.* ¶¶ 295, 299, 301, 387. However, neither the Fifth or Sixth Amendments are applicable here. The Fifth Amendment's due process clause applies to the federal actors, not to state actors. *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008)("This claim is plainly foreclosed by the Constitution. Prunchak is a local law enforcement official, and the Fifth Amendment's due process clause only applies to the federal government.") Plaintiff includes no federal government actors in his FAC, therefore the Fifth Amendment does not apply. The Sixth Amendment provides for the rights of the accused in *criminal* prosecutions. U.S. Const. Amend. VI. This is a civil action, therefore, the Sixth Amendment is inapplicable. Accordingly, the Court **DISMISSES** Plaintiff's § 1983 claims against all Defendants with respect to any Fifth or Sixth Amendment violations without leave to amend.

### e. Eighth Amendment

The Eighth Amendment "is specifically concerned with the unnecessary and

24-cv-0137-BJC-DDL

wanton infliction of pain in penal institutions." *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The Court previously dismissed this claim with prejudice and without leave to amend because Plaintiff had not alleged that he was incarcerated as a result of his interaction with Defendants. Plaintiff alleges no new facts to demonstrate that he was incarcerated due to the actions of Defendants. Therefore, the Court dismisses Plaintiff's § 1983 claims against all Defendants with respect to any Eighth Amendment violation with prejudice and without leave to amend.

### f. *Fourteenth Amendment – Equal Protection*

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws . . .' " *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Id.* "Where the challenged governmental policy is 'facially neutral,' proof of its disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy." *Id.* The Ninth Circuit has "held that § 1983 claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

In the TAC, Plaintiff claims that Defendant Officers violated his rights under the "Fourteenth Amendment pursuant to a conspiracy maintained and executed by them and were enabled by a racist policy, as implemented by them." *Id.* ¶12. These conclusory allegations are insufficient to advance a claim under the Fourteenth Amendment because they do not illustrate that the Defendants acted with an intent or purpose to discriminate against him because of his religious beliefs. Accordingly, the Court **DISMISSES** Plaintiff's § 1983 claims against Defendants Officers and SDPD Officials with respect to

violates of the Equal Protection Clause of the Fourteenth Amendment with leave to amend.

### g. Fourteenth Amendment – Due Process

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law. *Newman v. Sathyavaglswaran*, 287 F.3d 786, 789 (9th Cir. 2002) (quoting U.S. Const. amend. XIV, § 1). The plaintiff must allege "(1) a deprivation (2) of property (3) under color of state law." *Id.*

Plaintiff contends that the Officer Defendants discriminated against him on the basis of his race and religion when they participated in the "illegal eviction" and insisted that he leave the residence. TAC at ¶ 109.  Plaintiff's TAC fails to sufficiently allege that the Defendant Officers participated in the "illegal" eviction and deprived him of his property.

On the day of the purported wrongful eviction, Plaintiff alleges that he arrived back at the rental property after attending synagogue to find that Dierickx, Defendant Dup-A-Key, and Rough Rider Inc. had changed the locks to the rental premises. *Id.* ¶¶ 336, 365-66. He asserts that Dierickx put his belongings in garbage bags, removed them from the property, and prevented Plaintiff from stopping her. *Id.* ¶ 113. But Plaintiff alleges that Defendant Officers arrived many hours later, long after the locks were changed and personal belongings removed, which is insufficient to support this claim. *See Anderson v. Lomas*, 2011 WL 5190044, at *4 (N.D. Cal. Oct. 31, 2011) (finding defendant officers could not be held liable under § 1983 for alleged wrongful eviction where the officer defendants arrived on the scene and told plaintiffs to leave the premises only after plaintiff's possessions were moved out and the locks were changed). Thus, Plaintiff fails to plausibly allege that Defendant Officers were part of the alleged unlawful eviction that deprived him of his property. Accordingly, the Court **DISMISSES** Plaintiff's § 1983 claims against Defendants Officers and SDPD Officials with respect to any Fourteenth Amendment Due Process violations with leave to amend.

//

### h. *Monell* Claims

Plaintiff alleges that the County and City of San Diego instituted a policy or custom that deliberately excludes Jewish people, and as a result, he was subjected to discriminatory treatment by the Officer Defendants. TAC ¶ 519-522. He asserts a *Monell* claim that Chief of Police David Nisleit, Assistant Chief Paul Connelly, Patrol Operations Assistant Chief Tina Williams, Northern Patrol Captain Benjerwin Manansala are personally liable for failing to train and supervise, or they were negligent in their acquiescence to the Officers' conduct. TAC ¶¶ 528-534.

Under *Monell,* a municipality cannot be vicariously liable under § 1983 for the acts of its employees, but a municipality can be liable for deprivations of constitutional rights deriving from the execution of a municipality's policies or customs. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To state a *Monell* claim, a plaintiff must sufficiently allege "(1) he was deprived of a constitutional right; (2) the [local government] had a policy; (3) the policy amounted to deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). The plaintiff must show a "direct causal link" between the policy and the constitutional deprivation. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc).

"A 'policy' is 'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in questions.'" *Tsao*, 698 F.3d at 1143 (quoting *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006)). A plaintiff can satisfy *Monell*'s policy requirement in one of three ways. First, a plaintiff can show that a local government acted "pursuant to an expressly adopted official policy." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (quoting *Thomas v. Cnty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014)). Second, "a public entity may be held liable for a 'longstanding practice or custom.' Such circumstances may arise when, for instance, the public entity 'fail[s] to

implement procedural safeguards to prevent constitutional violations' or, sometimes, when it fails to train its employees adequately." *Id.* (citations omitted). Third, a plaintiff can show that "the individual who committed the tort was an official with final policy-making authority" or that "such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* at 974 (quoting *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010)).

As determined above, Plaintiff has not alleged a violation of his constitutional rights, therefore, he fails to satisfy the first *Monell* requirement. Even if he could assert a constitutional claim, he fails to sufficiently plead that the government had a policy that amounted to deliberate indifference of his right and that the policy was the root cause of the violation.

### 1. Supervisory Liability

Plaintiff alleges that Supervisor Scheidecker violated his rights under § 1983 by directing his subordinates "in the acts and failures to act that deprived the plaintiff of these rights." TAC ¶ 438. He contends that Scheidecker sided with the officers, "set in motion a series of acts by subordinates" that he reasonably knew caused Plaintiff's deprivation of his rights, and threatened to arrest Plaintiff if he did not vacate the premises. *Id.* ¶ 437, 439, 440, 448. However, Supervisor Scheidecker arrived to the scene after the subordinate officers had already been in contact with Plaintiff, therefore, he could not have "set in motion" their actions. *Id.* at ¶ 169; ECF No. 48-1 ¶ 44, 437; ECF No. 48-2 at 2-3, 14. Moreover, it is unclear from the allegations what acts were set in motion. As such, Plaintiff's claim for supervisory liability fails to allege a *Monell* claim and is dismissed.

### 2. Respondeat Superior

As indicated above, Plaintiff asserts a claim that Defendants Nisleit, Connelly, Williams, and Manansala are "personally liable for his harm" based on the actions of their subordinates under 42 U.S.C. § 1983. ECF No. 48-1 at ¶ 527. To hold a defendant liable, they must personally cause the violation, or know of the violation, and fail to prevent it

because there is no respondeat superior liability in § 1983. *Manier v. Cook*, 394 F. Supp. 2d 1282, 1286 (2005).

This claim fails because there are no facts alleged by Plaintiff that Defendants Nisleit, Connelly, Williams, and Manansala "knew that the wrongful conduct created a substantial risk of harm to him" and "fail[ed] to take adequate action to prevent the wrongful conduct." ECF No. 48-1 at ¶¶ 528, 530, 531. Accordingly, Plaintiff's claims for supervisor liability under a theory of respondeat superior are dismissed without prejudice.

### 3. Failure to Train, Supervise under Policy

Plaintiff's claims are unclear, but it appears he is alleging that the City was negligent in the training, hiring, supervising, and retention of officers. ECF No. 48-1 at ¶ 517. Yet he also argues that the City had a policy or custom that violated his rights. *Id.* at ¶ 518. In support, Plaintiff mentions a "cultural awareness policy" promulgated by the District Attorney for County Law Enforcement which he claims excludes Jewish people. ECF No. 48 at ¶¶ 23, 27, 111; ECF No. 48-1 at ¶¶ 520, 524. However, he does not point to a connection between the City of San Diego and the County and District Attorney, or allege that the County and District Attorney trained or included SDPD officers in such training. Therefore, the allegations are insufficient to connect the "policy" to the actions of the Officer Defendants.

Plaintiff further alleges that the police are not adequately trained in "basic contract law" or "eviction policy." *Id.* at ¶¶ 521, 526. But he does not state that there is a policy underlying these claims, and if there is a policy, whether the City has adopted it, and whether it guided officer training. The claim lacks any description of a causal relationship between the policy and a constitutional deprivation.

Similarly, Plaintiff's failure to train claim fails because he only supports his allegation with a single incident, the September 2, 2023, event when Defendant Officers were called to assist. A failure to train claim requires that the plaintiff show a "pattern of similar constitutional violations by untrained employees" necessary to demonstrate deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). "[A] single instance

of unlawful conduct is insufficient to state" a *Monell* claim. *Benavidez, v. Cnty. Of San Diego,* 993 F.3d 1134, 1154 (9th Cir. 2021).

Plaintiff also asserts that Defendant Officers were "following practices and procedures and policies of the San Diego Police Department approved and promulgated by Chief of Police David Nisleit, the City of San Diego, and the San Diego PD." (SAC ¶¶ 30–31). Because this is a conclusory allegation, the Court declines to accept the allegation as true. *See In re Gilead Scis. Secs. Litig.*, 536 F.3d at 1055. Accordingly, Plaintiff fails to allege a *Monell* claim under an expressly adopted policy theory.

Furthermore, "[m]ere negligence will not suffice to show *Monell* liability" under a failure-to-train theory. *Benavidez*, 993 F.3d at 1153. Plaintiff does not allege more than negligence. TAC ¶ 517 (requesting relief for "Negligence in the Training, Supervising, Hiring and Retention of Police Officers"). Therefore, Plaintiff fails to sufficiently allege a *Monell* violation under a failure-to-train theory.

Finally, Plaintiff alleges that Defendants Gloria and Stephan ratified the actions of the Officer Defendants, and Gloria "knew of and specifically made a deliberate choice to approve" of the subordinate officers' actions. (ECF No. 48-1 at ¶ 550.) In order to assert a *Monell* claim under the ratification theory, a plaintiff must "show that the 'authorized policymakers' approve a subordinate's decision and the basis for it. . . The policymaker must have knowledge of the constitutional violation and actually approve of it." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). Here, Plaintiff's allegations fall far short. He makes conclusory allegations with no supporting facts that Gloria or the Police Chief knew about the Defendant Officers' actions that day, knew that those actions violated Plaintiff's constitutional rights, and that Gloria and the Police Chief made a deliberate choice to approve of those actions.

Accordingly, the Court **DENIES** Plaintiff's *Monell* claims as to remaining Defendants with leave to amend.

### i. Bane Act

The TAC contains only cursory mentions of the Bane Act, but nowhere in it does

Plaintiff outline the contours of the Act, or explain how the Defendants' conduct violated the Act. The Court previously dismissed this claim with leave to amend, yet Plaintiff has again failed to assert sufficient allegations to support a Bane Act claim. Accordingly, the Court **DENIES** Plaintiff's Bane Act Claims as to remaining Defendants with leave to amend.

> ### j. Civil Conspiracy; §§ 1985, 1986 Claims[6]
>
> #### (i) Civilian Defendants: Wood, Dup-A-Key, Vincent and Weston Fisk, Rough Rider Real Estate, Erik Wiese

A "[civil] [c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (Cal. 1994). "Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort." *Id.* at 511. The elements of civil conspiracy are "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (Cal. App. Ct. 1995).

Plaintiff has alleged no new facts to support his claim of civil conspiracy with regard to the civilian Defendants. Instead, there are only conclusory allegations of a conspiracy. In one passage, Plaintiff asserts that the civilian Defendants conspired to evict him for discriminatory reasons, explaining that "Landlords enlisted San Diego Locksmithing company Dup-a-Key and its owners Vincent and Weston Fisk in exchange for payment and unauthorized legal assistance from Dierckx (she is inactive on the CA State Bar Website) assistance with Vincent Fisk's ongoing divorce lawsuit." TAC ¶ 97. The TAC is

---

[6] In Plaintiff's list of purported causes of action, he includes 42 U.S.C. §§ 1981 and 1982, but he does not plead any facts or argue any entitlement to relief under these statutes. Therefore, the Corut declines to address these statutes.

replete with similar vague and conclusory allegations regarding the civilian Defendants conspiring against him. Therefore, Plaintiff again fails to sufficiently allege any facts supporting an inference of conspiracy to the civilian Defendants. Accordingly, for all civilian Defendants, the Court **DISMISSES** Plaintiff's civil conspiracy claim with leave to amend.

### (ii) Officer Defendants

To state a § 1985 claim, Plaintiff must plead facts alleging:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in their person or property or deprived of any right or privilege of a citizen of the United States.

*Gaetz v. City of Riverside*, 722 F. Supp. 3d 1054, 1068–69 (C. D. Cal. 2024) (citing *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992)). "To meet the first element, 'the plaintiff must state specific facts to support the existence of the claimed conspiracy.'" *Id.* at 1069 (quoting *Burns v. King*, 883 F.2d 819, 821 (9th Cir. 1989)). Courts have held allegations that identify "the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators take to achieve that purpose" are sufficient. *Steshenko v. Albee*, 70 F. Supp. 3d 1002, 1015 (N.D. Cal. 2014). Plaintiff must also allege "which defendants conspired, how they conspired, and how the conspiracy led to a deprivation of . . . constitutional rights." *Id.* Although a conspiracy can be shown via circumstantial evidence, "to establish violation of Section 1985(3), plaintiff will have to do more than show independent parallel behavior on the part of the defendants." *Reichardt v. Payne*, 396 F. Supp. 1010, 1019 (N.D. Cal. 1975).

"Section 1986 authorizes a remedy against state actors who have negligently failed to prevent a conspiracy that would be actionable under § 1985." *Cerrato v. S.F. Cmty. Coll. Dist.*, 26 F.3d 968, 971 n.7 (9th Cir. 1994). "A claim can be stated under [§ ] 1986 only if the complaint contains a valid claim under [§ ] 1985." *Karim-Panahi v. Los*

*Angeles Police Dept,* 839 F.2d 621, 626 (9th Cir. 1988).

Plaintiff asserts a claim under § 1985(3) claiming that "he believes a conspiracy was formed between" Defendants "Diericks, Toni [Wood], Erik Wiese, Jonathan Wiese, Chris Tinavian, Vincent Fisk, and the five conspiring San Diego Police Department officers on the Thursday or Friday preceding Labor Day weekend." TAC ¶ 95. He goes on to opine as follows:

> [the] conspiracy was likely discussed during dinner or lunchtime on September 1, where it was agreed between Erik Wiese, Dierckx, Jonathan Wiese, and Chris Tivanian that these five responding police officers, Madison, Inzunza, Rayas, Hibbard, and Scheidecker would facilitate Plaintiff's illegal eviction, because the five conspiring officers indicated with his earshot that it was a code 7, which is San Diego Police radio code for a 'meal break,' the time the police arrive after deliberately delaying their arrival to what they claimed to Plaintiff was his emergency 911 call was around 7:00pm, and the time the internal police officer called Plaintiff to mock him on Friday Evening around 10/14/2023 was at 7:00pm.

*Id*. ¶96.

However, these conclusory allegations are insufficient to support the existence of a conspiracy. Plaintiff's accusations are merely speculative as he simply asserts that he "believes" a conspiracy was formed, and that it was "likely discussed" during a meal. *Turner v. County of San Diego,* 2016 WL 6804997, *6 (S.D. Cal., July 21, 2016)(citing *Caldeira v. Cty. of Kaui*, 866 F.2d 1175, 1181 (9th Cir. 1989)("to prove a section 1985 conspiracy between a private party and the government under section 1983, the plaintiff must show an agreement or 'meeting of the minds' by the defendants to violate his constitutional rights.")

Similarly, Plaintiff has not alleged specific facts to show the City Defendants' discriminatory animus, therefore, he fails to satisfy the second element. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (stating the second element "means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.") Plaintiff alleges, without support, that "the responding officers

were motivated by anti-Semitic ideologies and were influenced or bribed with favors from Erik Wiese's brother Jonathan and Ann Dierickx, who conspired to facilitate Plaintiff's illegal eviction." TAC ¶ 128. These are accusations that lack factual support. Similarly, his accusation that the officers must have harbored discriminatory animus against him because he Jewish due to the "eviction" happening on the Sabbath is plainly deficient to satisfy the third element.

Because Plaintiff has not sufficiently alleged a conspiracy under 42 U.S.C. § 1985(3), his claim under § 1986 also fails.

### B. "Conversion of Chattel"

"The elements of the tort of conversion are well settled in California: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Tyrone Pac.Intern., Inc., v. MV Eurychili*, 658 F.2d 664, 666 (9th Cir. 1981)(*citing Hartford Financial Corp. v. Burns*, 96 Cal.App.3d 591, 598 (1979).

Plaintiff contends that his "residential apartment lease rent, deposit and personal effects inside the apartment were converted by Defendants because of the illegal eviction." TAC ¶ 186. However, Plaintiff fails to plead sufficient facts showing he had an ownership or right to possession at the time of the "illegal" eviction to satisfy the first element. As the TAC states, only he had signed the lease agreement, and Dierickx sent him an email specifically stating that "we have no contract." ECF No. 48-2 at 27.

Moreover, the facts as alleged by Plaintiff do not demonstrate that any named Defendant touched, possessed, or disposed of any of Plaintiff's personal property. Instead, these allegations are contradicted by the TAC which alleges that only Dierckx removed his personal property from the unit. TAC ¶ 113. According to Plaintiff, he was allowed to regain possession of his personal belongings because they were placed in garbage bags by Dierckx, and she let him "retrieve his things" after four hours. *Id.*

Plaintiff alleges that the Officers took his small pocketknife but later returned it, therefore, this allegation does not support a finding of conversion. TAC ¶ 36, 37. In

24-cv-0137-BJC-DDL

addition, the conversion claim with regard to the pocketknife fails because he has not alleged damages from the purported conversion. "[A] plaintiff in an action for conversion may recover either (1) the value of the property at the time of conversion, with interest, or (2) 'an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; . . . .' In addition to either of the above, a plaintiff may also receive a fair compensation for the time and money properly expended in pursuit of the property." *Krueger v. Bank of Am.*, 145 Cal. App. 3d 204, 215 (Cal. Ct. App. 1983) (quoting Cal. Civ. Code § 3336). Plaintiff's purported harm does not fall under any of the categories of damages Plaintiff can recover from a conversion claim. Accordingly, Plaintiff's conversion claim is **DISMISSED** as to remaining Defendants with leave to amend.

### 4. FHA, Unruh Civil Rights Act, and FEHA

Under the Fair Housing Act ("FHA"), "it unlawful to refuse to sell or rent, 'or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.'" *Martinez v. City of Clovis*, 90 Cal.App.5th 193, 254 (citing 42 U.S.C. § 3604(a). "The elements of a disparate impact claim in violation of the FHA are (1) a practice that (2) actually causes or, alternatively, predictably will cause (3) a disparate impact on a group of persons because of a protected characteristic. The elements of a segregate effect claim in violation of the FHA are (1) a practice that (2) creates, increases, reinforces, or perpetuates segregated housing patterns because of a protected characteristic." *Id.* at 258. The Unruh Civil Rights Act states: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal.Civ.Code § 51(b). California's Fair Employment and Housing Act ("FEHA") prohibits the owner of any housing accommodation to discriminate on the basis of "race,

24-cv-0137-BJC-DDL

color, religion, sex, marital status, national origin, ancestry, familial status, or disability of that person." California Govt.Code § 12955(a). "The provisions of FEHA and the Unruh Act at issue 'protect substantially the same rights as the FHA, and are subject to the same analysis." *Gant v. Real Property Management*, 2016 WL 3418342, *3 (E.D.Cal. June 22, 2016) citing *Cabrera v. Alvarez*, 977 F.Supp.2d 969, 975 (N.D. Cal. March 27, 2013).

Here, Plaintiff makes multiple conclusory claims that Dierickx and the named Defendants discriminated against him on the basis of his Jewish faith when they allegedly conspired to remove him from the rental property. He argues that "Defendants injured Plaintiff in violation of the Unruh Civil Rights Act" and FHA by discriminating against him in violation of Government Code section 12955. TAC ¶ 195. He claims that Dierickx, Wiese Real Estate employees, Erik Wiese and Kevin McGuire, and police officers Madison, Inzunza, Hibbard, Raya and Scheidecker denied him full and equal accommodations because of his religion." TAC ¶ 199. As with his other claims, Plaintiff fails to allege anything more than conclusory facts that any of the Defendants considered his religion in their actions. The facts demonstrate that the rental agreement was only signed by Plaintiff, Plaintiff did not pay the full deposit as required, Plaintiff entered the property without Dierickx's permission, and the various Defendants were present or assisted Dierickx in regaining possession of the rental unit. Moreover, even if the TAC contained factual allegations supporting this claim, Section 12955 does not apply because none of the named Defendants owned the rental unit. *See Gant*, 2016 WL 3418342, * 3 (Section 12955 makes it unlawful for the *owner* of any housing accommodation to discriminate against any person on the basis of religion.) Accordingly, Defendants' motions to dismiss are granted on this claim, with leave to amend.

However, Plaintiff fails to assert a practice by any of the Defendants that was designed to exclude him from housing on the basis of his religion. Therefore, his FHA claim fails. In addition, he has not alleged that any of the Defendants owned the property, making FEHA inapplicable. Hence, the Court grants Defendants' motions to dismiss

24-cv-0137-BJC-DDL

Plaintiff's FHA and FEHA claims without prejudice and with leave to amend.

**C. State Law Claims**

*1. Intentional Infliction of Emotional Distress*

Under California law, the elements of the tort of intentional infliction of emotional distress ("IIED") are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. ..." *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009). Conduct is considered "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (*citing Potter v. Firestone*, 25 Cal.4th 965, 1001 (1993)). In addition, the defendant must engage in "conduct intended to inflict injury or engaged in with the retaliation that injury will result." *Id.* "Liability for intentional infliction of emotional distress 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' " *Id.* citing Rest.2d Torts, § 46, com.

The TAC contains no allegations that satisfy the "extreme and outrageous" elements of IIED. Plaintiff's conclusory allegations included that he "suffered significant emotional distress, humiliation, and loss of housing as a direct result of Defendants' unlawful actions" and that Defendants' conduct was "deliberate and outrageous." TAC ¶ 414. With regard to the Officer Defendants, Plaintiff claims that when he returned from synagogue to find Dierickx changing the locks on the rental unit, he "asked to use the restroom and was attempting to find a place in the backyard" to relieve himself when the "officers ambushed" him and prevented him "from leaving the premises," which Plaintiff claims was humiliating. TAC ¶¶ 122, 123. Taking the allegations as true, as the Court must at this stage, it appears that Plaintiff suffered an indignity, but these allegations are not so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes*, 46 Cal.4th at 1050. Accordingly, Plaintiff fails to sufficiently plead a cause of action for IIED under California law, and the Court grants the Defendants' motions to

dismiss with leave to amend.

### 2. Interference with Contractual Relations

"Tortious interference with contractual relations requires '(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.'" *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal.5th 1130, 1141 (2020).

The facts as alleged in the TAC indicate that Plaintiff was the only party to sign the agreement, and Dierickx specifically stated that they "had no contract." Therefore, Plaintiff has not asserted sufficient facts to satisfy the first element, a valid contract. As a result, the Court grants Defendants' motions to dismiss Plaintiff's interference with contractual relations claim with leave to amend.

### 3. Defamation Per Se and False Light

In California, the elements of a claim for defamation are: "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal.4th 683, 720 (2007). Moreover, "[t]he elements of the tort of false light invasion of privacy are (1) the defendant caused to be generated publicity of the plaintiff that was false or misleading, (2) the publicity was offensive to a reasonable person, and (3) the defendant acted with actual malice." *Flores v. Von Kleist*, 739 F.Supp. 2d 1236, 1259 (E.D. Cal. Sept., 10, 2010)

Plaintiff's defamation claim fails because he has not alleged that there was any publication of a statement made against him. Similarly, his false light claim fails because Plaintiff has not alleged that Defendants generated publicity against him. Accordingly, Defendants' motions to dismiss are granted as to these claims with leave to amend.

### 4. Fraudulent Misrepresentation

Claims for fraudulent misrepresentation and fraud share the same elements. *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1018 (N.D. Cal. 2015). Under California law,

24-cv-0137-BJC-DDL

the elements of a claim for fraud are: (1) a misrepresentation or omission of a fact that should have been disclosed; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. See *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

Here, Plaintiff does not include any facts or assertions that the Defendants misrepresented or omitted any fact that should have been disclosed to him. Defendants motions to dismiss are granted, and the claim is dismissed with leave to amend.

### 5. *Ralph Civil Rights Act*

The purpose of the Ralph Act is to provide a civil cause of action for victims of hate crimes. *See Campbell v. Feld Entertainment, Inc.*, 75 F. Supp. 3d 1193, 1205 (N.D. Cal. 2014). The Ralph Act provides that people under California's jurisdiction are entitled to be free from "violence ... intimidation ... because of political affiliation, or ... any characteristic ... in subdivision (b) or (e) ..." Cal. Civ. Code § 51.7. A plaintiff must show the following elements to prevail on a Ralph Act claim: (1) the defendant committed or threatened violent acts against the plaintiff; (2) the violence or intimidation was motivated by their perception of a protected characteristic; (3) the plaintiff suffered an injury; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm. See *Knapps v. City of Oakland*, 647 F. Supp 2d 1129, 1167 (N.D. Cal. 2009).

Here, Plaintiff asserts a generic, conclusory allegation that "Defendants injured Plaintiff, who is Jewish, in violation of the Ralph Act by subjecting him to violence and intimidation by the threat of violence because of his race." TAC ¶ 510. Plaintiff claims that "Defendants" threatened him with "false arrest [and] bodily harm," but he does not identify which Defendants did the purported threatening. TAC at ¶ 418. Plaintiff alleges that Dierckx "pushed Plaintiff out of the way" after forcibly breaking into the apartment, but Dierckx is not a Defendant. TAC ¶ 113. These allegations are insufficient to sustain a claim under the Ralph Act, therefore, the Court grants Defendants' motions to dismiss this claim with leave to amend.

//

**6. Leave to Amend**

Leave to amend should be granted "unless amendment would be futile." *Knevelbaard Dairies v. Kraft Foods, Inc.,* 232 F.3d 979, 983 (9th Cir. 2000). However, courts have broad discretion in denying motions for leave to amend when the plaintiff has already been granted leave to amend. *See Rich v. Shrade*r, 823 F.3d 1205, 1209 (9th Cir. 2016) ("[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be disturbed."); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).

Here, the Court has already dismissed Plaintiff's claims in his second amended complaint with leave to amend. ECF No. 43. The previous dismissal order explained in depth why the claims failed, yet Plaintiff failed to remedy the noted deficiencies in the Third Amended Complaint. Although not required, the Court will permit Plaintiff to file a Fourth Amended Complaint.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

24-cv-0137-BJC-DDL

## V.   CONCLUSION AND ORDER

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss. The following claims are dismissed with leave to amend: claims for violation of § 1983 under the First, Fourth, and Fourteenth Amendments; *Monell* Claims; Bane Act claims; civil conspiracy for the non-police officers; conversion; claims pursuant to FHA and FEHA; IIED; contract interference; defamation per se; false light; fraudulent misrepresentation, Unruh Act claims; and Ralph Civil Rights Act claims.  The following claims are dismissed without leave to amend: §1983 claims against the private individuals, and Plaintiff's Fifth, Sixth, and Eighth Amendment claims. Should Plaintiff choose to amend his pleading, he must do so in compliance with Federal Rule of Civil Procedure 8 **no later than April 30, 2026.**

**IT IS SO ORDERED**

Dated:  March 30, 2026

Honorable Benjamin J. Cheeks
United States District Judge

24-cv-0137-BJC-DDL